D. Maimon Kirschenbaum
Denise A. Schulman
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 981-9587 (fax)

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------x

| | |
|---|---|
| **VANESSA LAGUERRE,** | **CASE NO.** |
| **Plaintiff,** | <u>**COMPLAINT**</u> |
| **v.** | **DEMAND FOR JURY TRIAL** |
| **PARAMOUNT GLOBAL and DOUGLAS JOHNSON,** | |
| **Defendants.** | |

-----------------------------------------------------x

Plaintiff alleges as follows:

<u>**JURISDICTION AND VENUE**</u>

1.      This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution/

2.      Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

3.    Defendant Paramount Global is a Delaware Corporation with its principal place of business in midtown-Manhattan.  Defendant Paramount Global is an American multinational mass media and entertainment conglomerate.  Defendant Paramount Global owns Viacom/CBS, which through subsidiaries like Defendant New 38th Floor Productions, Inc manages television stations.

4.    Defendant Paramount Global's has an annual gross volume of sales in excess of $500,000.

5.    Defendant Douglas Johnson is a senior executive at Paramount Global.  His title is Senior Vice President, Head of Production, Short Form.  He is responsible for leading, managing and developing the in-house Short Form Production management teams at Viacom Media Networks.

6.    Plaintiff Vanessa Laguerre is a New York Resident.  She was employed by Defendants as an Executive Assistant to Defendant Johnson from July 2019  through August 2024.

## FACTS

### Wage and Hour Allegations

7.    Defendants committed the following alleged acts knowingly, intentionally and willfully.

8.    Defendants knew that nonpayment of minimum wage and nonpayment of overtime would economically injure Plaintiff and violated federal and state laws.

9.    Plaintiff began her work for Defendants as an Executive Assistant to Defendant Johnson in 2019.

10.     Plaintiff's regular working hours were from 9:00 a.m. to 6:00 p.m., five days per week.   Plaintiff was always available during these hours and did not take any bona fide break during these hours.

11.     Plaintiff also was required to be available for Defendant Johnson's travel or other needs after hours.  This included taking calls from Defendant Johnson and dealing with Defendant Johnson's very active travel schedule.

12.     Even when Defendant Johnson was in a different zone, such as California, Defendant Johnson required Plaintiff to remain on call late in the evening to perform very mundane tasks that he could easily have done himself.

13.     For example, he frequently would finish a business dinner or the like in California, when it was already very late into the night in New York, and call Plaintiff so that Plaintiff could arrange for an Uber to pick him from his meeting and take him to his hotel.  Defendant similarly had Plaintiff attend to real time day to to day issues during his travel, such as restaurant reservations and hotel-related issues.

14.     Plaintiff did not exercise independent judgment and discretion with respect to matters of significance.  On the contrary, every consequential detail of Plaintiff's job, down to which specific flight, hotel room, and/or restaurant reservation she would book, had to be specifically approved by Defendant Johnson.

15.     As a result of Defendant Johnson's demanding requirements, Plaintiff regularly spent more than 5 hours per a week outside her scheduled hours performing work for Defendants.

16.     Until February of 2021, Plaintiff was paid an hourly rate, but was instructed by her superiors not to report any hours worked in excess of 40 per workweek, with the exception of work

performed on photoshoots, for which she did in fact log her overtime.  As a result, Plaintiff was not paid for the majority of overtime that she worked.

17.    After February of 2021, Defendants paid Plaintiff a flat salary with no overtime premium for hours worked in excess of 40 per workweek.

18.    Plaintiff's wage statements did not include her actual hours worked or her overtime rate.

19.    As a result of this lack of information, Plaintiff was not aware until recently of her right to be paid overtime and she thus did not pursue the claims herein until now.  Had Plaintiff received the legally required wage notices and wage statements, she would have sought recovery of her unpaid overtime compensation sooner.

### Discrimination/Retaliation Allegations

20.    Almost immediately after Plaintiff's employment began, Defendant Johnson made clear to her that he did not want to employ an executive assistant who wanted to have a family.   In fact he asked her on her first week of work whether she intended "to start a family."

21.    Plaintiff, who had an 8-year-old daughter at the time, was horrified by Defendant's inappropriate remark/question and understood that if and when she ever got to the point of having (more) children while employed by Defendants, she would likely be placing her job in jeopardy. Nonetheless, Plaintiff responded that she had just gotten married and did not immediately plan to have children.

22.    In July 2021, Plaintiff gave birth to a son.  Because Defendants' employees had all been working remotely during that time (since the onset of the Covid-19 pandemic), she managed to keep her pregnancy and new child hidden from Defendant Johnson.  Plaintiff took no maternity

leave that year and worked through her first months with her child, as she could not afford to risk her employment.

23.    In early 2022, Paramount started requiring employees to return to the office. Defendant Johnson called Plaintiff to ask when she intended to return to in-person work. Plaintiff then informed Defendant Johnson that she had a baby and asked if her return to in-person work could be somewhat relaxed. Defendant Johnson and Plaintiff agreed that Plaintiff would work in person two days per work and the remainder of the week at home.

24.    Defendant Johnson was noticeably stunned by Plaintiff's revelation that she had a child. Ever since that time, Plaintiff's relationship with Defendant Johnson went downhill.

25.    Specifically, Defendant Johnson began to nitpick all of Plaintiff's work and repeatedly complained that she did not respond to him fast enough. He did this even though Plaintiff was a solid employee, and Defendant Johnson was consistently pleased with her work before Plaintiff revealed that she had had a second child. To be sure, Plaintiff had received consistently strong performance reviews from Defendant Johnson up to this point.

26.    In October 2023, Plaintiff became pregnant again. Fearing further discrimination from Defendant Johnson, Plaintiff kept her pregnancy secret from Defendant Johnson until late January 2024, when she was visibly pregnant.

27.    Plaintiff spoke with Paul Samson, Head of Operations, Short Form Production, and Human Resources, to express her fears that Defendant Johnson would further discriminate against her because of her second pregnancy. Plaintiff was informed that she could schedule her maternity leave directly through Human Resources, which she did.

5

28.     Plaintiff began her maternity leave in June of 2024, when she gave birth.  She was scheduled to return October of 2024.  However, Plaintiff was terminated on August 16, 2024, while out on maternity leave.

29.     Plaintiff was told by Defendant Johnson that her termination was part of a global layoff at Paramount.

30.     Plaintiff was an excellent performer and never the subject of any formal performance-related discipline.   Plaintiff's termination was not performance-related.

31.     Defendant Johnson's openly discriminatory animus toward people such as Plaintiff who required family and/or medical leave clearly played a role in Plaintiff's termination.

32.     This is further evidenced by the targeted nature of Defendants' layoff.  Specifically, the individuals on Defendant Johnson's team that were either on protected leave or had young families were consistently chosen for termination.   These individuals included:

- Kevin G. -his wife was expected to give birth the exact month of his termination.
- Samantha P.-on maternity leave.
- Taylor M.-scheduled to take parental leave about the time of the layoff.
- Jill R.-pregnant, disclosed to Paramount.
- Dan F.-Had recently informed Defendant Johnson he hoped not to be moved to California because he has a small family.
- Kathryn S.- young mother, who was asked repeatedly by Defendant Johnson in Plaintiff's presence, "are you pregnant again?"

33.     Defendants' termination of Plaintiff's employment interfered with her right to reinstatement under the FMLA, retaliated against her based on her use of FMLA leave, and discriminated against her on the basis of her pregnancy/parental status.

## FIRST CLAIM FOR RELIEF
### (FLSA Overtime Violations, 29 U.S.C. § 201, *et seq.*)

34.     Plaintiff realleges and incorporate by reference all previous paragraphs.

35.     Throughout the statute of limitations period covered by these claims, Plaintiff worked in excess of forty (40) hours per workweek.

36.     At all relevant times, Defendants willfully, regularly and repeatedly failed to pay Plaintiff at the required overtime rates for hours worked in excess of forty (40) hours per workweek.

37.     Plaintiff seeks damages in the amount of her unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**(New York Overtime Violations,**
**N.Y. Lab. L. § 650 *et seq.*, N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2)**

38.     Plaintiff realleges and incorporates by reference all previous paragraphs.

39.     It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying proper overtime wages for all hours worked in excess of forty (40) hours in any workweek.

40.     Defendants willfully, regularly and repeatedly failed to pay Plaintiff at the required overtime rate for hours worked in excess of forty (40) hours per workweek.

41.     As a result of Defendants' willful and unlawful conduct, Plaintiff is entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

**THIRD CLAIM FOR RELIEF**
**(New York Notice Requirements,**
**N.Y. Lab. L. §§ 195, 198)**

42.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

7

43.     Defendants did not provide Plaintiff with the notices/statements required by N.Y. Lab. Law § 195.

44.     As a result of Defendants' unlawful conduct, Plaintiff is entitled to an award of damages pursuant to N.Y. Lab. Law § 198, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

**FOURTH CLAIM FOR RELIEF**
**(FMLA Retaliation and Interference – 29 U.S.C. § 6501 *et seq*.)**

45.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

46.     Defendants are employers under the FMLA, as they each employed more than 50 employees within a 75-mile radius.

47.     In violation of the FMLA, Defendants intentionally discriminated/retaliated against Plaintiff because she took FMLA-protected leave.

48.     In violation of the FMLA, Defendants interfered with Plaintiff's exercise of her FMLA rights.

49.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including but not limited to loss of income, including past and future salary, and benefits.

50.     As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, liquidated damages, interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**FIFTH CLAIM FOR RELIEF**
**New York State Human Rights Law ("NYSHRL"),**
**N.Y. Exec. L. §§ 290 et seq. –Pregnancy, and Familial Status Discrimination**

51.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

52.     In violation of the NYSHRL, Defendants intentionally discriminated against Plaintiff on the basis of her pregnancy and her status as a parent.

53.     Defendants' discrimination was sufficiently severe so as to affect the terms of Plaintiff's employment.

54.     Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected civil rights.

55.     As a direct and proximate consequence of Defendants' discrimination against Plaintiff, she has suffered, and continues to suffer, substantial monetary and non-monetary damages, including, but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, humiliation and anguish.

56.     As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for lost wages and emotional distress, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

**SIXTH CLAIM FOR RELIEF**
**New York City Human Rights Law ("NYCHRL")**
**N.Y. Admin. L. §§8-101 et seq. – Parental Status**

57.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

58. A copy of this Complaint will be delivered to the New York City Corporation Counsel.

59. In violation of the NYCHRL, Defendants discriminated against Plaintiff on the basis of her parental status.

60. As a direct and proximate result of Defendants' discrimination against Plaintiff, he has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary.

61. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

62. Defendants' conduct is malicious, intended to injure and was done with reckless indifference to Plaintiff's statutorily-protected civil rights.

63. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to lost wages, damages for emotional distress, physical injuries, and medical treatment; punitive damages; attorneys' fees and costs; and such other legal and equitable relief as this Court deems just and proper.

## SEVENTH CLAIM FOR RELIEF
### (NYLL Retaliation – N.Y. Lab. L. § 215)

64. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

65. Defendants retaliated against Plaintiff for using legally protected leave.

66. Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected rights.

67.    As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for lost wages and emotional distress, punitive damages, liquidated damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A.    An award of damages, according to proof, including liquidated damages, to be paid by Defendants;

B.    Penalties available under applicable laws;

C.    Costs of action incurred herein, including expert fees;

D.    Attorneys' fees, including fees pursuant to 29 U.S.C. § 216,  N.Y. Lab. L. § 663 and other applicable statutes;

E.    Pre-Judgment and post-judgment interest, as provided by law; and

F.    Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated:  New York, New York         Respectfully submitted,
        January 30, 2025

                                   JOSEPH & KIRSCHENBAUM LLP


                                   By:/s/ D. Maimon Kirschenbaum
                                   D. Maimon Kirschenbaum
                                   Denise A. Schulman
                                   32 Broadway, Suite 601
                                   New York, NY 10004
                                   Tel: (212) 688-5640
                                   Fax: (212) 981-9587

                                   *Attorneys for Plaintiff*


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial all causes of action and claims with respect to which she has a right to jury trial.

12