**KAUFF MCGUIRE & MARGOLIS LLP**
**810 Seventh Avenue, 33rd Floor**
**New York, NY 10019**
**(212) 644-1010 (Tel)**
**(212) 644-1936 (Fax)**

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VANESSA LAGUERRE,<br><br>      Plaintiff,<br><br>   -against-<br><br>PARAMOUNT GLOBAL and DOUGLAS JOHNSON,<br><br>      Defendants. | Case No. 1:25-cv-00879 (JPO) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Michele A. Coyne
Kauff McGuire & Margolis LLP
810 Seventh Avenue, 33rd Floor
New York, New York 10019
(212) 644-1010 (Office)
(212) 644-1936 (Fax)
coyne@kmm.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF UNDISPUTED FACTS ............................................................................ 2

  A. The Defendants ............................................................................................................ 2

  B. Plaintiff's Employment as a Project-Based Employee ........................................... 3

  C. Plaintiff's Conversion to Staff Employee ................................................................ 4

  D. Plaintiff's Work Hours and Extensive Time Away from Work ............................ 4

  E. Plaintiff's Inability to Calculate Any Overtime Owed ......................................... 6

  F. Plaintiff's Maternity Leave ....................................................................................... 7

  G. The 2024 Reduction in Force and Plaintiff's Termination .................................... 8

LEGAL ARGUMENT ........................................................................................................... 10

  A. Standard of Review .................................................................................................. 10

  B. Plaintiff's FLSA and NYLL Overtime Claims Should Be Dismissed ............... 10

  C. Plaintiff's NYLL Wage Notice Claims Should Be Dismissed ........................... 15

  D. Plaintiff's NYLL Retaliation Claim Should Be Dismissed ................................. 16

  E. Plaintiff's FMLA Retaliation and Interference Claims Should Be Dismissed .... 18

    1. FMLA Interference ............................................................................................. 18

    2. FMLA Retaliation .............................................................................................. 20

  F. Plaintiff's Discrimination Claims Should Be Dismissed ...................................... 22

  G. Plaintiff's NYCHRL Parental Status Discrimination Claims Should Be Dismissed ........... 27

CONCLUSION ...................................................................................................................... 27

CERTIFICATE OF COMPLIANCE .................................................................................... 29

4908-4766-5312.7

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. City of Chicago*,
  865 F.3d 936, 938 (7th Cir. 2017) ...................................................................11,12

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...........................................................................................10

*Anderson v. Mt. Clemens Pottery Co.*,
  328 U.S. 680 (1946) ...........................................................................................11

*Biggan v. City of New York*,
  192 A.D.3d 498 (1st Dept. 2021) .......................................................................25

*Bonn-Wittingham v. Project OHR, Inc.*,
  792 F. App'x 71 (2d Cir. 2019) ..........................................................................13

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 324 (1986) ...................................................................................12

*Chin v. New York City Hous. Auth.*,
  106 A.D.3d 443 (1st Dept. 2013) .......................................................................25

*Cherry v. New York City Hous. Auth.*,
  564 F. Supp. 3d 140 (E.D.N.Y. 2021) ...............................................................24

*Chiang v. Donahoe*,
  579 F. App'x 39 (2d Cir. 2014) ..........................................................................10

*Daniels v. 1710 Realty LLC*,
  497 F. App'x 137 (2d Cir. 2012) ...........................................................11, 12, 13, 14

*De Sesto v. Slaine*,
  171 F. Supp. 3d 194 (S.D.N.Y. 2016) ................................................................12

*Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*,
  691 F.3d 134 (2d Cir. 2012) ...............................................................................21

*Forrest v. Jewish Guild for the Blind*,
  3 N.Y.3d 295 (2004) .......................................................................................23, 26

*Garcia v. JonJon Deli Grocery Corp.*,
  No. 13 Civ. 8835, 2015 WL 4940107 (S.D.N.Y. Aug. 11, 2015) ......................10

*Garraway v. Solomon R. Guggenheim Found.*,
415 F. Supp. 2d 377 (S.D.N.Y. 2006)................................................................22

*Gottlieb v. County of Orange*,
84 F.3d 511 (2d Cir. 1996)..............................................................................10

*Granizo v. Krystal Fruits & Vegetables, Inc.*,
238 A.D.3d 719 (2d Dep't 2025) .....................................................................16

*Graziadio v. Culinary Inst. of Am.*,
817 F.3d 415 (2d Cir. 2016)........................................................................18, 21

*Greenberg v. State Univ. Hosp. - Downstate Med. Ctr.*,
838 F. App'x 603 (2d Cir. 2020).................................................................18, 21

*Head Injury Ass'n, Inc. v. N.Y. State Div. of Hum. Rts.*,
241 A.D.3d 1335 (2d Dep't 2025)....................................................................22

*Henry v. Wyeth Pharms., Inc.*,
616 F.3d 134 (2d Cir. 2010).............................................................................24

*James v. New York Racing Ass'n*,
76 F. Supp. 2d 250 (E.D.N.Y. 1999) ...............................................................19

*Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP*,
120 A.D.3d 18 (1st Dept. 2014)........................................................................25

*Kuebel v. Black & Decker Inc.*,
643 F.3d 352 (2d Cir. 2011).......................................................................11, 12

*Little v. Hartz Hotel Servs., Inc.*,
81 Misc. 3d 844(A) (Sup. Ct. N.Y. Cnty. 2023)..............................................16

*Lundy v. Catholic Health Sys. of Long Island, Inc.*,
711 F.3d 106 (2d Cir. 2013).............................................................................13

*Lyon v. Paramount Glob.*,
No. 22-CV-9229, 2025 WL 951502 (S.D.N.Y. Mar. 28, 2025) ......................12

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
542 F.3d 290 (2d Cir. 2008).......................................................................10, 26

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)....................................................................................22, 23

*Melman v. Montefiore Med. Ctr.*,
98 A.D.3d 107 (1st Dep't 2012)...........................................................22, 23, 26

4908-4766-5312.7

*Parcinski v. Outlet Co.*,
    673 F.2d 34, 36 (2d Cir. 1982)..................................................................................19

*Perry v. City of New York*,
    78 F.4th 502 (2d Cir. 2023) ...................................................................11, 12, 13, 14

*Posner v. Sprint/United Mgmt. Co.*,
    478 F. Supp. 2d 550 (S.D.N.Y. 2007)....................................................................25

*Potenza v. City of New York*,
    365 F.3d 165 (2d Cir. 2004).....................................................................................21

*Reich v. S. New England Telecomms. Corp.*,
    121 F.3d 58 (2d Cir. 1997)................................................................................11, 14

*Rocco v. Goldberg (In re Goldberg)*,
    487 B.R. 112 (Bankr. E.D.N.Y. 2013)...................................................................22

*Schreiber v. Worldco, LLC*,
    324 F. Supp. 2d 512 (S.D.N.Y. 2004)....................................................................24

*Serby v. N.Y. City Dep't of Educ.*,
    526 F. App'x 132 (2d Cir. 2013) ............................................................................21

*Shapiro v. City of New York*,
    649 F. App'x 71 (2d Cir. 2016) ........................................................................23, 28

*Sista v. CDC Ixis N. Am., Inc.*,
    445 F.3d 161 (2d Cir. 2006).....................................................................................19

*Slattery v. Swiss Reinsurance Am. Corp.*,
    248 F.3d 87 (2d Cir. 2001).......................................................................................25

*St. Mary's Honor Ctr. v. Hicks*,
    509 U.S. 502 (1993)..................................................................................................23

*Stephenson v. Hotel Emples. & Rest. Emples. Union Local 100*,
    6 N.Y.3d 265 (2006) ................................................................................................23

*Thompson v. Jennings & Hartwell Fuel Oil Corp.*,
    2015 WL 5437492, at *4 (E.D.N.Y. Aug. 27, 2015)............................................17

*Tomassi v. Insignia Fin. Group, Inc.*,
    478 F.3d 111 (2d Cir. 2007).....................................................................................24

*Velazquez v. Yoh Services, LLC*,
    803 F. App'x 515 (2d Cir. 2020)......................................................................13, 15

4908-4766-5312.7

*Williams v. New York City Hous. Auth.*,
   61 A.D.3d 62 (1st Dep't 2009) ..........................................................................23, 27

*Woods v. START Treatment & Recovery Ctrs., Inc.*,
   864 F.3d 158 (2d Cir. 2017) ....................................................................................21

*Zhang v. Centene Mgmt. Co., LLC*,
   2023 WL 2969309 (E.D.N.Y. Feb. 2, 2023) ..........................................................17

**Statutes**

29 U.S.C. § 211(c) ............................................................................................................12

Fair Labor Standards Act ...............................................................................11, 12, 13, 15

Family and Medical Leave Act ................................................................................. *passim*

N.Y. Exec. Law § 292(26)(a).........................................................................................22

N.Y. Exec. Law § 296(1)(a)...........................................................................................22

N.Y. Lab. Law § 215 ................................................................................................17, 18

New York City Human Rights Law.......................................................................... *passim*

New York Lab. Law § 195 .......................................................................................15, 16

New York Labor Law ............................................................................................... *passim*

NY WARN Act..............................................................................................................10

NYLL §§ 195 and 198 ....................................................................................................16

New York State Human Rights Law ........................................................................ *passim*

**Other Authorities**

29 C.F.R. § 825.216................................................................................................19, 20

12 NYCRR § 146-2.2(d)........................................................................................15, 16

12 NYCRR § 146-2.3 .....................................................................................................16

Fed. R. Civ. P. 56(a) .......................................................................................................10

N.Y.C. Admin. Code § 8-107(1)(a) ...............................................................................22

<u>**PRELIMINARY STATEMENT**</u>

Plaintiff Vanessa Laguerre brings claims against Paramount Global ("Paramount" or the "Company") and Douglas Johnson alleging unpaid overtime, wage notice violations, retaliation under the New York Labor Law ("NYLL"), interference and retaliation in violation of the Family and Medical Leave Act ("FMLA"), and pregnancy and parental and familial status discrimination under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). The undisputed evidence demonstrates that Plaintiff cannot establish any of these claims as a matter of law.

First, Plaintiff's unpaid overtime claims fail. Plaintiff admitted that she cannot identify a single hour of overtime for which she was not compensated and that she has no idea how she would even calculate any amount of unpaid time. To the contrary, the evidence establishes that the Company repeatedly informed Ms. Laguerre that she was eligible for overtime and that Mr. Johnson instructed Ms. Laguerre to enter any overtime hours. The record further shows that, far from working overtime, Plaintiff took extensive time away from work during her workday to attend to personal matters while still being compensated as if she was working. In the absence of any evidence identifying any amount of unpaid overtime, Plaintiff's overtime claims cannot survive summary judgment.

Second, Plaintiff's wage notice claims under NYLL are baseless. Plaintiff concedes that she received multiple wage notices throughout her employment, and she is unable to identify a single instance in which she did not receive a required wage notice. Therefore, this claim should also be dismissed.

Third, Plaintiff's retaliation claim under NYLL is meritless. Plaintiff admitted that she never engaged in protected activity, an admission that dooms this claim.

1

Fourth, Plaintiff's claims of FMLA retaliation and interference should also be dismissed. There is no dispute that Plaintiff was permitted to take all the leave she requested. Moreover, Plaintiff admitted that her belief that her leave contributed to her termination was based solely on the timing of her leave and her baseless speculation about the reasons others were let go. Plaintiff also cannot show that Defendants' legitimate, non-discriminatory reason for Plaintiff's termination -- a Company-wide reduction in force that resulted in the termination of 43 employees in Mr. Johnson's department – was pretextual.

Finally, Plaintiff cannot establish her claims of pregnancy and familial status discrimination. These claims are based on a single occasion on which Mr. Johnson allegedly asked Ms. Laguerre if she intended to start a family -- an innocuous question that he allegedly asked her five years before her employment was terminated. Beyond this question, Ms. Laguerre's claim relies on her subjective "feeling" that Mr. Johnson was hostile to her pregnancy and her conjecture about why other employees were laid off. As with her FMLA claims, Defendants have offered a legitimate, nondiscriminatory reason for Plaintiff's termination and Plaintiff has no evidence that this reason was pretextual.

For these reasons, Defendants respectfully submit that there are no genuine disputes of material fact and that they are entitled to judgment as a matter of law.

## STATEMENT OF UNDISPUTED FACTS
### A. The Defendants

Paramount is an American multinational mass media and entertainment conglomerate. (Compl. ¶ 3.) Douglas Johnson is the Senior Vice President of Short Form Production, Multi-

4908-4766-5312.7

Platform Group at Paramount Skydance. (Johnson Tr. 15:7-12.) [1] His primary responsibilities include overseeing marketing productions for the Company's brand, creative, and marketing groups. (Johnson Tr. 15:20-24.)

### B. Plaintiff's Employment as a Project-Based Employee

Ms. Laguerre was hired in July 2019 as a temporary, project-based employee ("PBE") through Cast & Crew, a third party that provides payroll and other related services to Paramount. (Laguerre Tr. 185:11-14; Lacey Tr. 16:5-12.) Mr. Johnson interviewed Plaintiff and made the decision to offer her the Executive Assistant position. (Laguerre Tr. 186:18-22; Johnson Tr. 52:3-15.) At the time of her hire, Plaintiff already had one young child. (Laguerre Tr. 187:17-23.)

Plaintiff's primary duties as Mr. Johnson's Executive Assistant consisted of managing his calendar and arranging his travel. (Laguerre Tr. 205:23-206:20, 217:4-218:10.) Plaintiff's duties remained consistent throughout her employment. (Laguerre Tr. 205:19-22.) Plaintiff's "Deal Memos" governing her employment as a PBE explicitly stated that she was eligible for overtime. (Laguerre Tr. 195:17-200:9; Coyne Decl. Ex. 5.) As a PBE, Plaintiff submitted weekly timecards through Cast & Crew's timekeeping system, and Mr. Johnson approved those timecards, including the overtime hours that Ms. Laguerre submitted. (Laguerre Tr. 53:6-57:11.) According to her timecards, Ms. Laguerre's scheduled work hours as a PBE were 10:00 am to 6:00 pm, Monday-Friday. (Coyne Decl. Ex. 6.)

---

[1] Relevant deposition transcript pages are attached as Exhibits 2-4 to the Declaration of Michele A. Coyne, Esq., dated April 16, 2026 (the "Coyne Declaration"), and submitted herewith.

**C. Plaintiff's Conversion to Staff Employee**

In approximately September 2021, Mr. Johnson made the decision to convert Plaintiff from a PBE to a regular staff employee. (Laguerre Tr. 201:4-15, 202:3-203:11.) This conversion was considered a positive development in Plaintiff's employment. (Laguerre Tr. 202:15-19.) At the time of her conversion, Plaintiff received a "Notice and Acknowledgment of Pay Rate and Pay Day" document reflecting her hourly rate and overtime rate, which she signed. (Laguerre Tr. 200:14-202:2; Coyne Decl. Ex. 24.)

Plaintiff's job duties did not change when she became a staff employee. (Laguerre Tr. 205:19-22.) She continued to report directly to Mr. Johnson throughout her employment. (Laguerre Tr. 207:7-13, 208:2-4.) As a staff employee, Plaintiff was expected to enter her time worked in Paramount's Workforce timekeeping system. (Lacey Tr. 21:16-24:16.)

**D. Plaintiff's Work Hours and Extensive Time Away from Work**

While Plaintiff's scheduled working hours were approximately 10:00 a.m. to 6:00 pm, Plaintiff had "a tremendous amount of flexibility and freedom to manage her time," particularly because she worked primarily remotely for most of her employment. (Laguerre Tr. 270:18-271:3; Johnson Tr. 198:4-11.) Mr. Johnson's expectation was that Plaintiff complete her work within 40 hours per week and that, if she worked over 40 hours, she would submit for overtime. (Johnson Tr. 92:16-23, 102:7-103:2.)

The record demonstrates that Plaintiff spent a significant amount of time on personal matters during the workday. (Laguerre Tr. 93:2-94:2, 391:20-395:3, 396:24-398:11, 440:6-19, 443:13-444:6.) Even after the Company began returning to in-person work in approximately early 2022 following the COVID pandemic, Plaintiff did not return to the office on a regular basis. (Johnson Tr. 96:4-97:20.) Mr. Johnson noted in Plaintiff's 2022 performance review that

4908-4766-5312.7

he "will need to set days in the office" and asked for "deeper engagement and presence." (Coyne Decl. Ex. 8.) In her 2023 mid-year review, Mr. Johnson again documented his concern, writing that he needed "more in-office time and when remote that you are on available and at a computer during working hours." (Coyne Decl. Ex. 9.)

On March 9, 2023, Mr. Johnson texted Plaintiff, "Need you to start coming in at least once a week when I'm here." (Laguerre Tr. 478:22-479:15; Coyne Decl. Ex. 10.) On March 5, 2024, Mr. Johnson sent another text message stating, "Hey there. Need you in the office two days a week. Just like everyone else. It's noticed and we need not to be noticed." (Laguerre Tr. 509:17-510:15; Coyne Decl. Ex. 11.) In a separate message, Mr. Johnson instructed Plaintiff to establish "working hours" of "nine to six with one-hour lunch" and told her, "If you are not going to be accessible during the day, you need to let me know just as you would at the office." (Coyne Decl. Ex. 12; Laguerre Tr. 496:3-498:23.)

Even when Ms. Laguerre finally started working from the office on limited occasions, she made a habit of arriving late and leaving early. For example, Ms. Laguerre sent the following text messages to Mr. Johnson:

- On April 6, 2023 at 10:05 am, "Morning, Running a little behind. Will be at the office at 11a." (Coyne Decl. Ex. 25; Laguerre Tr. 506:16-507:3);

- On May 2, 2023 at 11:07am – "Will be in the office shortly, 11:15" (Coyne Decl. Ex. 26; Laguerre Tr. 477:23-p. 478:14);

- On May 25, 2023 at 9:51 am, "On the train. Bad service. Heading to Penn." (Coyne Decl. Ex. 27; Laguerre Tr. 504:22-505:3); and

- On June 24, 2024 at 10:56 am, "Called ... inside Penn Station, taking to sub to the office. I'll be in the office in seven minutes." (Coyne Decl. Ex. 28; Laguerre Tr. 490:23-492:24.)

Ms. Laguerre's text messages also show that Plaintiff regularly left the office well before the end of the workday—at 4:49 p.m. on one occasion, at 4:40 p.m. on another, at 3:15 p.m. on

5

yet another, and at 3:06 p.m. on another occasion to pick up her daughter. (Coyne Decl. Exs. 13-16; Laguerre Tr. 470:21-471:24, 483:15-484:9, 489:18-490:4, 502:14-503:7.)

Plaintiff additionally did not have any childcare arrangements during a significant portion of her employment. (Laguerre Tr. 94:3-17, 95:18-22, 258:20-259:2.) She testified that from the time she had her second child in July 2021 until she went on maternity leave for her third child, she "didn't have any childcare" and was "the only one" caring for her children. (*Id*.) During this same period, her husband was working approximately 20 hours a day, six days per week, at two different jobs. (*Id*.) Plaintiff also did not request time off for medical appointments that occurred during her workday, including the day that she gave birth. (Laguerre Tr. 394:3-20.)

**E. Plaintiff's Inability to Calculate Any Overtime Owed**

Despite alleging in her Complaint that she "regularly spent more than 5 hours per a [sic] week outside her scheduled hours performing work for Defendants," Plaintiff admitted at her deposition that she cannot identify a single hour of overtime for which she was not compensated. (Compl. ¶ 15; Laguerre Tr. 49:19-51:25.) When asked how many hours of overtime she worked but for which she was not paid, Plaintiff responded, "I don't have an answer to" that question. (Laguerre Tr. 50:8-12.) Asked if she could provide an estimate, she stated, "No. I don't have an estimated number." (Laguerre Tr. 50:20-24.) Plaintiff was also asked how she would go about calculating any unpaid overtime hours, and she responded, "I would not know." (Laguerre Tr. 50:25-51:7.) Plaintiff also acknowledged that she has no records that would allow her to calculate any purportedly unpaid overtime hours. (Laguerre Tr. 58:4-11.)

Meanwhile, the payroll records from Cast & Crew confirm that Plaintiff was paid for all overtime that she entered during her tenure as a PBE. (Coyne Decl. Ex. 18.) When asked whether

there were any entries for which she did not actually get paid for overtime, Plaintiff admitted there were not. (Laguerre Tr. 267:24-268:3.)

The Company also notified Ms. Laguerre repeatedly of her overtime rate after she was converted to a staff employee position. (Laguerre Tr. 200:14-202:2; 204:11-205:2; Coyne Decl. 7, 22-24.) Moreover, Mr. Johnson specifically instructed Ms. Laguerre to enter her hours if, in fact, she worked any overtime. For example, in Ms. Laguerre's 2023 Performance Check-In, Mr. Johnson instructed Ms. Laguerre as follows: "Be sure if you work weekends or after-hours to put in for that time…." (Coyne Decl. Ex. 9.) Mr. Johnson sent Ms. Laguerre a text message in June 2023 stating in part, "Also to say it, if you do work overtime or on weekend put in for OT." (Coyne Decl. Ex. 12.) Ms. Laguerre admitted that she understood this message to be an instruction from Mr. Johnson to enter for any overtime she worked. (Laguerre Tr. 498:15-22; p. 500:9-16.)

### F. Plaintiff's Maternity Leave

Plaintiff gave birth to her second child on July 30, 2021. (Laguerre Tr. 249:20-23.) Plaintiff did not disclose her pregnancy to Mr. Johnson, and she did not request any maternity leave or other time off. (Laguerre Tr. 249:8-19.)

Plaintiff did not disclose the existence of her second child to Mr. Johnson until approximately January 2022, roughly six months after the child was born, when the Company began requiring employees to return to in-person work. (Laguerre Tr. 249:24-250:13.) During a Zoom call about returning to in-person work, Plaintiff picked up her baby and introduced him to Mr. Johnson via the screen. (Laguerre Tr. 250:6-251:8, 252:8-11.)

Plaintiff became pregnant with her third child in approximately October 2023. (Compl. ¶ 26.) While Plaintiff testified that she was "nervous" and "scared" to inform Mr. Johnson about

4908-4766-5312.7

the pregnancy, she became more comfortable after speaking with another supervisory employee, Paul Sansone. (Laguerre Tr. 281:6-282:24.) When Plaintiff told Mr. Johnson that she was pregnant, he advised her to contact the Human Resources department so that she could obtain the benefits afforded to her as a staff employee. (Johnson Tr. 181:16-182:8; Laguerre Tr. 295:4-10.)

Plaintiff applied for maternity leave through Unum, Paramount's third-party leave administrator. (Laguerre Tr. 295:19-296:5; Coyne Decl. Ex. 19.) On May 21, 2024, Unum was notified of Plaintiff's need for leave and her request for short-term disability beginning on June 28, 2024. (Coyne Decl. Ex. 20.) Plaintiff's last day worked was June 28, 2024. (*Id*.) Plaintiff gave birth to her third child on July 2, 2024. (Laguerre Tr. 97:20-24.) She intended to take six weeks of maternity leave and return to work on approximately August 12, 2024. (Laguerre Tr. 296:6-297:6.) Plaintiff was granted all the maternity leave that she intended to take. (Laguerre Tr. 297:2-298:10.)

**G. The 2024 Reduction in Force and Plaintiff's Termination**

In recent years, the Company has undergone multiple rounds of significant headcount reductions. In 2024 alone, there were two large-scale layoffs across the Company, including one in August 2024. (Lacey Tr. 36:4-9.) The directive for these layoffs came from the head of the Company and was filtered down by department. (Lacey Tr. 36:10-18.)

In connection with the August 2024 layoff, Mr. Johnson was tasked with reducing the compensation amounts in his budget by 50 percent. (Johnson Tr. 35:3-12.) Mr. Johnson reviewed the employees in his department and determined which roles could be eliminated. (Johnson Tr. 35:18-23, 47:3-48:24.) He then submitted his list to his supervisor, Josh Line, the Chief Brand Officer, who did not make any changes to Mr. Johnson's recommendations. (Johnson Tr. 36:4-15, 37:15-22.) Holly Lacey, Senior Manager, Human Resources, confirmed that Mr. Johnson

4908-4766-5312.7

partnered with Human Resources and the legal department before his list was finalized. (Lacey Tr. 36:19-24.) The layoff resulted in the termination of 43 employees across all levels and functions of Mr. Johnson's department. (Johnson Tr. 166:22-167:4.)

In making decisions about which employees to lay off, Mr. Johnson considered job function, where responsibilities could be absorbed by the remaining workforce, and the decrease in work volume in his department. (Johnson Tr. 47:3-51:16.) He explained that "many people are affected up and down various levels" and that the choices were determined primarily by "how we can continue working with the remaining workforce, the operation." (Johnson Tr. 33:9-19.)

With respect to Plaintiff specifically, Mr. Johnson explained that with the volume of work decreasing and the department being reduced so significantly, there was no longer a need for a full-time assistant devoted to just calendar management and travel coordination, functions that could readily be absorbed by the remaining workforce. (Johnson Tr. 47:3-51:16, 165:8-166:8.) He testified that he "did not need as much support, and other duties could be absorbed by the group" because "the group was being reduced, and the volume was decreasing with production." (Johnson Tr. 165:8-166:8.) Following Plaintiff's departure, another employee, Joe Zucker, assumed all of Plaintiff's former duties alongside a substantial range of other existing responsibilities he had, including supporting the broader group with operations, data entry, coordinating group meetings, and assisting in production. (Johnson Tr. 188:7-188:23, 192:14-193:5.) Mr. Johnson testified that Plaintiff's former duties constitute only approximately twenty-five percent to one-third of Mr. Zucker's overall workload. (Johnson Tr. 192:14-17, 195:4-9, 195:14-196:3, 196:15-24.) Mr. Johnson further confirmed that there are no tasks that Ms. Laguerre formerly performed that Mr. Zucker is not currently performing. (Johnson Tr. 196:25-197:3.) Mr. Johnson described the layoff as a "massive amount of layoffs across all divisions and

groups. Not just my group, but the entire company—thousands of people." (Johnson Tr. 167:22-168:7.)

Mr. Johnson notified Plaintiff of her termination in August 2024. (Laguerre Tr. 297:18-298:7; Coyne Decl. Ex. 21.) Because the layoff triggered obligations under the NY WARN Act, Plaintiff remained employed and on the payroll through November 15, 2024. (*Id*.)

## LEGAL ARGUMENT

### A. Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory statements, conjecture, and speculation by the party opposing summary judgment are insufficient to create a genuine issue of material fact. *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008); *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). Rather, the nonmoving party must offer concrete, admissible evidence from which a reasonable juror could return a verdict in its favor. *See Chiang v. Donahoe*, 579 F. App'x 39, 40 (2d Cir. 2014).

### B. Plaintiff's FLSA and NYLL Overtime Claims Should Be Dismissed

Courts in the Second Circuit apply the same burden-shifting framework to claims for unpaid overtime under both the Fair Labor Standards Act ("FLSA") and the NYLL. *Garcia v. JonJon Deli Grocery Corp.*, No. 13 Civ. 8835, 2015 WL 4940107, at \*4 n.8 (S.D.N.Y. Aug. 11, 2015) ("Courts use the same burden-shifting framework to determine liability for unpaid

4908-4766-5312.7

overtime under the NYLL [and the FLSA]"). To establish liability under either statute, a plaintiff must prove two elements: (1) that she performed work for which she was not properly compensated, and (2) that the employer had actual or constructive knowledge of that work. *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946)).

At summary judgment, a plaintiff must produce sufficient evidence to show the amount and extent of her uncompensated work "as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687; *see also Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997). While it is possible for a plaintiff to meet this burden through estimates based on her own recollection, *Kuebel*, 643 F.3d at 362, she must nonetheless provide some evidentiary basis from which violations of the FLSA or NYLL and the amount of an award may be reasonably inferred. *See Daniels v. 1710 Realty LLC*, 497 F. App'x 137, 139 (2d Cir. 2012) (requiring "at least some credible evidence" that the plaintiff performed overtime work).

If the plaintiff meets this initial burden, the burden shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. *See Anderson*, 328 U.S. at 687–88; *Kuebel*, 643 F.3d at 362.

Critically, where an employer maintains a reasonable process for reporting overtime and pays the employee for all overtime that the employee actually records, the employer will not ordinarily be chargeable with constructive knowledge of any unreported overtime work. *See Perry v. City of New York*, 78 F.4th 502, 513 (2d Cir. 2023) (citing *Allen v. City of Chicago*, 865 F.3d 936, 938 (7th Cir. 2017)). Thus, where the employer's records demonstrate that it compensated the plaintiff for every hour of overtime she reported, and the plaintiff is unable to

4908-4766-5312.7

identify any additional uncompensated hours or provide any evidentiary basis from which such hours could reasonably be inferred, no genuine issue of material fact exists as to the overtime claim. *See Daniels*, 497 F. App'x at 139 (affirming summary judgment where plaintiff failed to provide "at least some credible evidence" of uncompensated overtime work); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (nonmoving party must "go beyond the pleadings" and designate "specific facts showing that there is a genuine issue for trial"); *Lyon v. Paramount Glob.*, No. 22-CV-9229 (JGLC), 2025 WL 951502, at **16–17 (S.D.N.Y. Mar. 28, 2025) (granting employer summary judgment on plaintiff's overtime claim where plaintiff merely asserted conclusory allegations that she was not fully paid and that she was instructed not to record her hours without furnishing any evidence of any particular day or weeks that she was not paid).

Moreover, the Second Circuit has recognized that "establishing a reasonable process for an employee to report . . . work time" is one way an employer may exercise reasonable diligence, such that "an employer with such a system will not ordinarily be chargeable with constructive knowledge of unreported work." *Perry*, 78 F.4th at 512 (quoting *Allen*, 865 F.3d at 938). While the FLSA imposes a duty on employers to maintain accurate records of hours worked, *Kuebel*, 643 F.3d at 363; *see also* 29 U.S.C. § 211(c), this duty does not require employers to be "clairvoyant." *De Sesto v. Slaine*, 171 F. Supp. 3d 194, 203 (S.D.N.Y. 2016). Rather, "[t]he requirement to pay overtime wages kicks in only 'once an employer knows or has reason to know that an employee is working overtime.'" *Id.* (quoting *Kuebel*, 643 F.3d at 363).

A plaintiff's overtime claim is significantly undermined where the evidence demonstrates that she did not even work 40 hours per week or took substantial time off during her employment. In *Velazquez v. Yoh Services, LLC*, the Second Circuit affirmed summary judgment

on an FLSA overtime claim where the plaintiff acknowledged that her "regularly scheduled hours rarely exceeded 30 a week, nowhere near the 40-hour threshold for overtime under the FLSA." 803 F. App'x 515, 518 (2d Cir. 2020). Courts have consistently held that to establish an overtime claim, a plaintiff must demonstrate that she worked more than 40 hours in a given workweek and was not compensated for the excess hours. *See Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (plaintiffs must "allege sufficient factual matter to state a plausible claim that they worked compensable overtime in a workweek longer than 40 hours"); *Bonn-Wittingham v. Project OHR, Inc.*, 792 F. App'x 71, 73 (2d Cir. 2019) ("In order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours")(quotations and citations omitted).

Here, the undisputed record evidence compels the conclusion that Plaintiff's overtime claims fail as a matter of law. First, the evidence establishes that Plaintiff was paid for all overtime she recorded. (Laguerre Tr. 49:19-51:25.) Cast & Crew payroll records confirm that Plaintiff was compensated for every one of the 44.88 hours of overtime she entered during her tenure as a PBE, and Plaintiff expressly acknowledged at her deposition that she was paid for every overtime entry. (Laguerre Tr. 49:19-51:25; Coyne Decl. Ex. 18.) *See Perry*, 78 F.4th at 512; *Daniels*, 497 F. App'x at 139.

Second, her Deal Memos and wage notices establish that Ms. Laguerre was aware that her position was overtime eligible. (Laguerre Tr. 53:6-57:11, 200:14-202:2; 204:11-205:2; Coyne Decl. Ex. 5.) Paramount also maintained a timekeeping system for employees to report their hours worked. (Lacey Tr. 21:16-24:16.) Moreover, Mr. Johnson specifically instructed Ms. Laguerre to enter her hours if, in fact, she worked any overtime. Mr. Johnson's instructions of

13

4908-4766-5312.7

"Be sure if you work weekends or after-hours to put in for that time…." and "Also to say it, if you do work overtime or on weekend put in for OT" could not have been clearer. (Coyne Decl. Ex. 9, 12.) Because Paramount maintained a reasonable process for reporting overtime and repeatedly directed Plaintiff to use it, the employer cannot be charged with constructive knowledge of any unreported overtime. *See Perry*, 78 F.4th at 512.

Third, Plaintiff is wholly unable to quantify any amount of allegedly unpaid overtime. At her deposition, Plaintiff admitted that she could not identify a single hour of overtime for which she was not compensated, could not provide even an estimate of the number of unpaid overtime hours, and conceded that she "would not know" how to calculate any such amount. (Laguerre Tr. 49:19-51:25.) She further acknowledged that she has no records that would allow her to perform such a calculation. (Laguerre Tr. 58:4-11.) This complete absence of evidence is fatal to her claims, as a plaintiff must produce "at least some credible evidence" of uncompensated overtime to survive summary judgment. *Daniels*, 497 F. App'x at 139; *see also Reich*, 121 F.3d at 66.

Fourth, far from working overtime, the evidence demonstrates that Plaintiff routinely took large portions of the workday to attend to personal matters. (Laguerre Tr. 93:2-94:2, 391:20-395:3, 396:24-398:11, 440:6-19, 443:13-444:6.) Plaintiff regularly left the office well before the end of the workday. (Coyne Decl. Exs. 13-16; Laguerre Tr. 470:21-471:24, 483:15-484:9, 489:18-490:4, 502:14-503:7.) Moreover, Plaintiff testified that for a significant period of her employment, she had no childcare arrangements and was "the only one" caring for her children, while her husband worked approximately 20 hours per day. (Laguerre Tr. 94:3-17, 95:18-22, 258:20-259:2.) Mr. Johnson documented his concerns about Plaintiff's availability and presence during working hours in multiple performance reviews, noting a need for "deeper

4908-4766-5312.7

engagement and presence" and "more in-office time." (Coyne Decl. Exs. 8-9.) This evidence further undermines any inference that Plaintiff worked uncompensated overtime and instead supports the conclusion that she did not consistently work a full 40-hour week. *See Velazquez*, 803 F. App'x at 518. In sum, Plaintiff has failed to meet her burden of producing sufficient evidence from which a reasonable jury could infer that she performed overtime work for which she was not compensated. Summary judgment should be granted on Plaintiff's FLSA and NYLL overtime claims.

### C. Plaintiff's NYLL Wage Notice Claims Should Be Dismissed

Plaintiff's claim under NYLL § 195 for failure to provide required wage notices and statements should be dismissed. NYLL § 195(1) requires employers to provide employees, at the time of hiring, a written notice containing specific information about the terms of their employment. NYLL § 195(1)(a). The employer must obtain from the employee a signed and dated written acknowledgment of receipt of the notice, which the employer must preserve and maintain for six years. NYLL § 195(1)(a); 12 NYCRR § 146-2.2(d). Section 195(2) requires employers to notify employees in writing of any changes to the information set forth in the initial wage notice at least seven calendar days prior to the time of such changes, unless the changes are reflected on the wage statement furnished with the next payment of wages. NYLL § 195(2). Further, Section 195(3) requires employers to furnish each employee with a wage statement with every payment of wages, listing the dates of work covered by the payment, the name of the employee, the name, address, and telephone number of the employer, the rate or rates of pay and basis thereof, gross wages, deductions, allowances claimed as part of the minimum wage, and net wages. NYLL § 195(3).

15

Importantly, where an employer produces authenticated wage notices bearing the employee's signature confirming receipt, and the employee does not dispute their authenticity, the employee's claim that she did not receive the required notices is "utterly refuted" and must be dismissed. *See Little v. Hartz Hotel Servs., Inc.*, 81 Misc. 3d 844, 852 (Sup. Ct. N.Y. Cty. 2023) (dismissing wage notice claim where employer submitted signed pay/tip notice containing all required information, supported by affidavit from Human Resources Director).

Here, the undisputed record evidence forecloses Plaintiff's wage notice claims. At her deposition, Plaintiff confirmed that she received "Notice and Acknowledgment of Pay Rate and Pay Day" documents throughout her employment. (Laguerre Tr. 195:6-196:16, 199:9-200:9, 200:14-202:2, 204:11-205:2; Coyne Decl. Exs. 7, 22-24.) Each of these notices contained the information required by NYLL § 195(1), including her rate of pay and overtime rate. When asked to identify any notice she believed she did not receive, Plaintiff did not identify a single instance in which she failed to receive a required wage notice. (Laguerre Tr. 450:6-21.) Because Plaintiff has admitted receipt of multiple compliant wage notices and is unable to identify any deficiency whatsoever in the notices she received, her allegations are "utterly refuted" by the documentary evidence and her claim under NYLL §§ 195 and 198 should be dismissed. *See Granizo v. Krystal Fruits & Vegetables, Inc.,* 238 A.D.3d 719, 721 (2d Dep't 2025) (finding the plaintiff's claim for wage notice violation should have been dismissed where the defendant submitted signed wage notice which the plaintiff could not dispute).

**D. Plaintiff's NYLL Retaliation Claim Should Be Dismissed**

Plaintiff's NYLL § 215 claim fails as a threshold matter because she does not even allege that she participated in protected activity. NYLL § 215(1)(a) provides, in relevant part, that "[n]o employer or his or her agent … shall discharge, threaten, penalize, or in any other manner

discriminate or retaliate against any employee … because such employee has made a complaint to his or her employer … that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter." N.Y. Lab. Law § 215(1)(a). To establish a prima facie case of retaliation under Section 215, a plaintiff must show: "(1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Zhang v. Centene Mgmt. Co., LLC*, 2023 WL 2969309, at \*11 (E.D.N.Y. Feb. 2, 2023) (quoting *Thompson v. Jennings & Hartwell Fuel Oil Corp.*, 2015 WL 5437492, at \*4 (E.D.N.Y. Aug. 27, 2015))(internal alterations omitted). Under § 215, "courts have required the employee to complain about conduct that is a violation of the Labor Law in order to pursue a claim of retaliation." *Zhang*, 2023 WL 2969309, at \*11.

In this case, Plaintiff's own testimony demonstrates that she did not engage in any protected activity under the NYLL. When asked whether she ever complained that she was not being paid overtime, Plaintiff stated, "I just complained with my husband." (Laguerre Tr. 74:20–25.) Asked whether she complained to anyone at the Company, she confirmed: "Nobody at the company." (*Id*.) Plaintiff further admitted that she never made any complaint of discrimination to anyone in Human Resources: "I never spoke with human resources." (Laguerre Tr. 304:15–19.) And she conceded that she never made any such complaint to any supervisory person at the Company. (Laguerre Tr. 304:20–305:5.) These admissions are fatal to Plaintiff's retaliation claim under § 215.

**E. Plaintiff's FMLA Retaliation and Interference Claims Should Be Dismissed**

Plaintiff cannot establish any claim under the FMLA where she indisputably received exactly the leave of absence she requested and there is no evidence whatsoever that the inclusion of her position in a Company-wide reduction in force was related to her leave.

1. FMLA Interference

To prevail on a claim of interference with FMLA rights, a plaintiff must establish: (1) that she is an eligible employee under the FMLA; (2) that the defendant is an employer as defined by the FMLA; (3) that she was entitled to take leave under the FMLA; (4) that she gave notice to the defendant of her intention to take leave; and (5) that she was denied benefits to which she was entitled under the FMLA. *See Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016). Where, as here, a plaintiff received all of the leave she requested, her interference claim fails as a matter of law. *See Greenberg v. State Univ. Hosp. - Downstate Med. Ctr.*, 838 F. App'x 603, 606 (2d Cir. 2020) (affirming dismissal of FMLA interference claim where employee was granted "the full amount of time he requested").

There is no question that the FMLA does not guarantee an employee the right to return to her position under all circumstances. Under 29 C.F.R. § 825.216(a), "[a]n employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." An employer may therefore deny reinstatement where it can show that the employee "would not otherwise have been employed at the time reinstatement is requested." *Id.* Specifically, "[i]f an employee is laid off during the course of taking FMLA leave and employment is terminated, the employer's responsibility to continue FMLA leave, maintain group health plan benefits and restore the employee cease at the time the employee is laid off," provided the employer can demonstrate that

18

the employee would have been laid off regardless of the FMLA leave. 29 C.F.R. § 825.216(a)(1). A bona fide reduction in force constitutes a legitimate, nondiscriminatory reason for terminating an employee, even one who is on FMLA leave. *See James v. New York Racing Ass'n*, 76 F. Supp. 2d 250, 256 (E.D.N.Y. 1999) (citing *Parcinski v. Outlet Co.*, 673 F.2d 34, 36 (2d Cir. 1982)).

Here, the undisputed record evidence defeats Plaintiff's FMLA interference claim. First, Plaintiff admitted at her deposition that she "in fact, got all of the maternity leave that [she] intended to get." (Laguerre Tr. 297:2-298:10.) She applied for maternity leave through Unum, Paramount's third-party leave administrator, her leave was approved, she took the full six weeks of leave she intended to take, and there is no evidence in the record that Defendants denied, delayed, or otherwise interfered with any of her leave requests at any time during her employment. (Laguerre Tr. 295:19-298:10; Coyne Decl. Ex. 19.)

Second, Plaintiff cannot establish that her FMLA leave was a "negative factor" in the decision to terminate her. *See Sista v. CDC Ixis N. Am., Inc.,* 445 F.3d 161, 176 (2d Cir. 2006). The undisputed evidence establishes that Plaintiff's position was eliminated as part of a Company-wide reduction in force in which Mr. Johnson was directed to reduce his department's compensation budget by 50 percent. (Lacey Tr. 36:4-18; Johnson Tr. 35:3-12; Coyne Decl. Ex. 21.) The layoff resulted in the termination of 43 employees across all levels and functions of Mr. Johnson's department, and thousands of employees were affected across the entire company. (Johnson Tr. 166:22-167:4.) Mr. Johnson included Plaintiff's position in the layoff because her role was administrative, consisting primarily of calendar management and travel coordination. (Laguerre Tr. 205:23-206:20, 217:4-218:10; Johnson Tr. 60:21-25, 165:8-166:8.) With the volume of work decreasing and the department being reduced so significantly, there was no longer a need for a full-time assistant devoted to just calendar management and travel

19

coordination, functions that could readily be absorbed by the remaining workforce. (Johnson Tr. 47:3-51:16.) Indeed, following Plaintiff's departure, Joe Zucker absorbed all of her former duties -- which constitute only twenty-five percent to one-third of his workload -- alongside substantial other responsibilities. (Johnson Tr. 188:7-188:23, 192:14-17, 196:2-3, 196:25-197:3.) The ease with which Plaintiff's administrative duties were absorbed by a single employee who already had substantial other responsibilities underscores that Plaintiff's position was not critical to the functioning of the department. Because the FMLA provides that "[a]n employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period," 29 C.F.R. § 825.216(a), and because the undisputed evidence demonstrates that Plaintiff's position would have been eliminated regardless of whether she was on FMLA leave, Plaintiff's interference claim fails as a matter of law.

Plaintiff has no evidence to rebut this legitimate, nondiscriminatory reason for her termination. Plaintiff admitted at her deposition that her sole basis for believing that her maternity leave contributed to her termination was the temporal proximity of being terminated while on leave and the fact that another employee, Sasha Fugazy, had been laid off while pregnant. (Laguerre Tr. 299:4-301:13.) She confirmed there was "no other reason" for that belief. (*Id.*) She further admitted that she does not know the reason for the termination of any of the other individuals identified as comparators in her Complaint. (Laguerre Tr. 446:23-450:5.) Accordingly, summary judgment should be granted on Plaintiff's FMLA interference claim.

2. FMLA Retaliation

To establish a prima facie case of FMLA retaliation, a plaintiff must show: (1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she

20

suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *See Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004); *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 (2d Cir. 2012).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Graziadio*, 817 F.3d at 429. If the defendant carries that burden, the plaintiff must then demonstrate that the defendant's proffered explanation is pretextual. *Id.* The plaintiff may satisfy this burden "by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered" reason, *id.* at 430 (internal quotation marks omitted), or by providing evidence such that a reasonable factfinder could conclude that the prohibited reason was a "motivating factor" in the adverse employment action. *See Greenberg*, 838 F. App'x at 606; *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 168–69 (2d Cir. 2017). Importantly, temporal proximity between the exercise of FMLA rights and an adverse employment action, standing alone, is generally insufficient to defeat summary judgment at the pretext stage. *See Serby v. N.Y. City Dep't of Educ.*, 526 F. App'x 132, 135 (2d Cir. 2013).

Plaintiff's FMLA retaliation claim fails for the same reasons as her FMLA interference claim. Moreover, the undisputed evidence affirmatively undermines any inference of retaliatory intent. Mr. Johnson encouraged Plaintiff to contact Human Resources to receive her full maternity leave benefits, which is entirely inconsistent with a retaliatory motive. (Johnson Tr. 181:16-182:8; Laguerre Tr. 295:4-10.) Because Plaintiff has no evidence to suggest that the Company-wide reduction in force was a pretext for FMLA retaliation, summary judgment should be granted on this claim.

4908-4766-5312.7

<u>**F. Plaintiff's Discrimination Claims Should Be Dismissed**</u>

As with her FMLA claims, Plaintiff cannot establish any claim of discrimination related to her termination of employment.

The NYSHRL makes it unlawful for an employer to discriminate against an individual on the basis of the individual's sex, gender, or familial status. N.Y. Exec. Law § 296(1)(a). Discrimination on the basis of pregnancy is a form of gender, sex, and familial status discrimination under the NYSHRL. *See* N.Y. Exec. Law § 292(26)(a); *Head Injury Ass'n, Inc. v. N.Y. State Div. of Hum. Rts.*, 241 A.D.3d 1335 (2d Dep't 2025). The NYCHRL similarly prohibits discrimination in employment on the basis of gender, pregnancy, and parental status. N.Y.C. Admin. Code § 8-107(1)(a). Claims under both statutes are analyzed using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Garraway v. Solomon R. Guggenheim Found.*, 415 F. Supp. 2d 377, 384 (S.D.N.Y. 2006); *Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 113 (1st Dep't 2012).

To establish a prima facie case of pregnancy or familial status discrimination under the NYSHRL, a plaintiff must show: (1) she is a member of a protected class; (2) she was qualified to hold the position; (3) she was terminated from employment or suffered another adverse employment action; and (4) the discharge or other adverse action occurred under circumstances giving rise to an inference of discrimination. *See Head Injury Ass'n*, 241 A.D.3d at 1335; *Rocco v. Goldberg (In re Goldberg)*, 487 B.R. 112, 126 (Bankr. E.D.N.Y. 2013).

If the plaintiff establishes a prima facie case, a presumption of unlawful discrimination arises, and the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 305 (2004); *Melman*, 98 A.D.3d at 113. If the employer satisfies this

burden, the presumption raised by the prima facie case is rebutted, and the burden shifts back to the plaintiff to demonstrate that the employer's stated reason was merely a pretext for discrimination. *Melman*, 98 A.D.3d at 114. To prove pretext, a plaintiff must show "both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *see also Forrest*, 3 N.Y.3d at 305. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *See Stephenson v. Hotel Emples. & Rest. Emples. Union Local 100*, 6 N.Y.3d 265, 271 (2006).

While the NYCHRL provides broader protections than the NYSHRL, even under the NYCHRL's more liberal standard, a plaintiff must still prove by a preponderance of the evidence that she was treated "less well" than other employees because of her protected status. *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 78 (1st Dep't 2009). Defendants may avoid liability under the NYCHRL if they can prove that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider "petty slights and trivial inconveniences." *Id.* Importantly, where the same *McDonnell Douglas* analysis applies and the employer demonstrates a legitimate, nondiscriminatory reason for the adverse action that the plaintiff cannot rebut with evidence of pretext, summary judgment remains appropriate even under the NYCHRL. *See Shapiro v. City of New York*, 649 F. App'x 71, 73 (2d Cir. 2016).

Plaintiff's discrimination claims rest almost entirely on a single remark allegedly made by Mr. Johnson during Plaintiff's first few months of employment. Specifically, Plaintiff claims that in approximately October or November 2019, Mr. Johnson asked Plaintiff whether she and her husband were "going to start a family any time soon." (Laguerre Tr. 224:15-225:22.) Putting aside that this alleged question makes no sense since Ms. Laguerre already had a young child at

23

the time Mr. Johnson decided to hire her, this remark, made approximately five years before her termination in November 2024, is a textbook "stray remark" that is insufficient to establish discriminatory intent or pretext under either the NYSHRL or the NYCHRL.

The Second Circuit has made clear that "the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." *Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111, 115 (2d Cir. 2007). In assessing whether a remark is probative of discriminatory intent or merely a non-probative "stray remark," courts consider four factors: "(1) who made the remark, i.e.[,] a decisionmaker, a supervisor, or a low-level co-worker; (2) whether the remark was made in relation to the employment decision at issue; (3) the content of the remark, i.e., whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, i.e., whether it was related to the decisionmaking process." *Cherry v. New York City Hous. Auth.*, 564 F. Supp. 3d 140 (E.D.N.Y. 2021) (quoting *Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512, 518–19 (S.D.N.Y. 2004) (additional internal citations omitted); *see also Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010). An employer's remarks "will rise above the level of stray remarks" only "when the statements are: (1) made by the decision maker or one whose recommendation is sought by the decision maker; (2) related to the specific employment decision challenged; and (3) made close in time to the decision." *Posner v. Sprint/United Mgmt. Co.*, 478 F. Supp. 2d 550, 557 (S.D.N.Y. 2007) (internal quotations omitted).

Applying these factors, Mr. Johnson's alleged question about starting a family is a quintessential stray remark. While Mr. Johnson was Plaintiff's supervisor, there is no evidence whatsoever that the remark was related to the termination decision or to any decision-making process. To the contrary, the remark was allegedly made five years before any adverse

employment action occurred. This vast temporal gap renders the alleged remark essentially devoid of probative value. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 n.2 (2d Cir. 2001) (characterizing remarks as "stray" where they were "unrelated to [the plaintiff's] discharge").

Moreover, the content of the remark itself does not reflect hostility, animus, or discriminatory intent. Plaintiff admitted that Mr. Johnson never made any other such remark during the entirety of her employment and that his behavior toward her was "consistent" from 2019 through the end of her employment, *i.e.*, he treated her "the same the whole time." (Laguerre Tr. 275:16-280:21.) Mr. Johnson's alleged question certainly cannot be considered any more than a "petty slight or trivial inconvenience." *See Biggan v. City of New York*, 192 A.D.3d 498, 499 (1st Dept. 2021) (affirming the trial court's order granting defendant's summary judgment, finding that a single isolated comment/incident where plaintiff who had a physical and mental disability was referred to as "dope" did not establish an inference of discrimination); *Chin v. New York City Hous. Auth.*, 106 A.D.3d 443, 444  (1st Dept. 2013) (affirming the lower court's dismissal of plaintiff's NYCHRL hostile work environment claim because an occasional offensive remark did not establish that plaintiff was treated "less well"); *Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP*, 120 A.D.3d 18, 26 (1st Dept. 2014) (upholding the lower court's dismissal of plaintiff's NYCHRL hostile work environment claim because a reasonable person would not consider isolated remarks more than petty slights and trivial inconveniences).

Even assuming *arguendo* that Plaintiff could establish a prima facie case of pregnancy or familial status discrimination, Defendants have articulated a legitimate, nondiscriminatory reason for Plaintiff's termination: a Company-wide reduction in force in which Mr. Johnson was directed to cut his department's compensation budget by 50 percent. The layoff resulted in the

25

termination of 43 employees across all levels and functions of Mr. Johnson's department, and thousands of employees were affected across the entire company. (Johnson Tr. 35:3-12, 166:22-167:4, 167:22-168:7; Lacey Tr. 36:4-9.)

As described above, Plaintiff's administrative role, which consisted only of calendar management and travel coordination, was not essential when the department's workload was substantially reduced, and Joe Zucker readily absorbed all her duties as only twenty-five percent to one-third of his workload. (Laguerre Tr. 205:23-206:20; Johnson Tr. 60:21-25, 165:8-166:8, 188:7-188:23, 192:14-17, 196:2-3, 196:25-197:3.) This evidence more than satisfies Defendants' burden to articulate a legitimate, nondiscriminatory reason for the adverse action. *See Forrest*, 3 N.Y.3d at 305; *Melman*, 98 A.D.3d at 113.

Plaintiff cannot establish pretext in support of her discrimination claim. Beyond the alleged 2019 question, Plaintiff testified that her belief that she was discriminated against was based on her subjective "feeling" that Mr. Johnson's tone was "a little off" and "short" during her third pregnancy. (Laguerre Tr. 275:4-277:2.) Plaintiff acknowledged that the discrimination she perceived was "not a visible discrimination" but rather was "subtle." (*Id*.) She could not point to any concrete action, statement, or policy that reflected discriminatory animus. (*Id*.) She further admitted that she does not know the reason for the termination of any of the other individuals identified as comparators in her Complaint. (Laguerre Tr. 446:23-450:5.)

Plaintiff's subjective feelings, speculation about the reasons for other employees' terminations, and reliance on an innocuous question allegedly made nearly five years before her termination are precisely the types of conclusory statements, conjecture, and speculation that are insufficient to create a genuine issue of material fact. *See Major League Baseball Props., Inc.*, 542 F.3d at 310. Because Plaintiff has no evidence that the Company-wide reduction in force

was a pretext for pregnancy or familial status discrimination, summary judgment should be granted on her NYSHRL claims for pregnancy and familial status discrimination.

### G. Plaintiff's NYCHRL Parental Status Discrimination Claims Should Be Dismissed

Plaintiff's NYCHRL parental status discrimination claim fares no better. Although the NYCHRL must be construed liberally and requires only that a plaintiff show she was treated "less well" because of her protected status, *Williams*, 61 A.D.3d at 78, Plaintiff cannot satisfy even this broader standard. As set forth above, Plaintiff's only evidence of discriminatory motive is a single, isolated, non-hostile remark made nearly five years before her termination, her own subjective feelings, and speculation about the reasons for another employee's termination. Meanwhile, the undisputed evidence demonstrates that Plaintiff was terminated as part of a massive, company-wide reduction in force affecting thousands of employees, that her role was nonessential, that Johnson actively supported Plaintiff's pregnancy and leave, and that Plaintiff received the full benefit of all maternity leave she requested. Even under the NYCHRL's more liberal standard, where the employer demonstrates a legitimate, nondiscriminatory reason for the adverse action and the plaintiff cannot rebut it with evidence of pretext, summary judgment is appropriate. *See Shapiro*, 649 F. App'x at 73. Summary judgment should therefore be granted on Plaintiff's NYCHRL parental status discrimination claims as well.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their motion for summary judgment and dismiss all of Plaintiff's claims with prejudice.

4908-4766-5312.7

Dated: New York, New York
April 16, 2026

Respectfully submitted,

KAUFF MCGUIRE & MARGOLIS LLP

By:/s/ *Michele A. Coyne*
 Michele A. Coyne

810 Seventh Avenue, 33rd Floor
New York, NY 10019
(212) 644-1010 (Tel)
(212) 644-1936 (Fax)

*Attorneys for Defendant*s

**CERTIFICATE OF COMPLIANCE**

The undersigned attorney hereby certifies that this brief complies with Rule 4.C of the Individual Practices of Judge J. Paul Oetken as specified below.

This brief contains a table of contents and a table of authorities. This brief's margins are one-inch wide. The text of this brief is double spaced and written in 12-point Times New Roman font. The footnote in this brief is double spaced and written in 10-point Times New Roman font.

The brief contains 8,130 words, not including the cover page, this certification of compliance, the table of contents, and the table of authorities.

Dated:   New York, New York
         April 16, 2026

Respectfully submitted,
KAUFF MCGUIRE & MARGOLIS LLP


By:/s/ *Michele A. Coyne*
    Michele A. Coyne

810 Seventh Avenue, 33rd Floor
New York, NY 10019
(212) 644-1010 (Tel)
(212) 644-1936 (Fax)
coyne@kmm.com

*Attorneys for Defendant*s