**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VANESSA LAGUERRE,<br><br>Plaintiff,<br><br>v.<br><br>PARAMOUNT GLOBAL and DOUGLAS JOHNSON,<br><br>Defendants. | No. 25-cv-0879 |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR SANCTIONS**

---

**JOSEPH & KIRSCHENBAUM LLP**

D. Maimon Kirschenbaum
Leah Seliger
45 Broadway, Suite 320
New York, NY 10006
Tel: (212) 688-5640

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...........................................................................................................i

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTS......................................................................................................................... 1

III.  DEFENDANTS ARE NOT ENTITLED TO SANCTIONS UNDER RULE 37(E) ............................ 5

    a.    Rule 37(e) Legal Standard ........................................................................ 5

    b.    Plaintiff took Reasonable Steps to Preserve her Job Search Data ................................. 7

    c.    Defendants have not been Prejudiced ................................................................. 8

    d.    Defendants Fail to Establish that Plaintiff had any Intent to Deprive them of her Job Search Records................................................................................................ 10

    e.    Adverse Inference Sanctions Are Not Warranted............................................. 15

IV.  DEFENDANTS ARE NOT ENTITLED TO SANCTIONS UNDER THE COURT'S INHERENT AUTHORITY ............................................................................................................. 17

V.   ATTORNEYS FEES ARE NOT WARRANTED ..................................................................... 18

VI.  CONCLUSION ........................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Arrigo v. Link Stop, Inc*, 2014 U.S. Dist. LEXIS 55495 (W.D.Wis. 2014) …………….………16

*A.W.S. v. Southampton Union Free Sch. Dist.,* 2022 U.S. Dist. LEXIS 72546 (E.D.N.Y. 2022) …………………………………………………………………………………………..14,22

*Barbera v. Grailed, LLC,* 2025 U.S. Dist. LEXIS 142885 (S.D.N.Y. 2025) ………...………..17

*Castro v. Smith,* 2023 U.S. Dist. LEXIS 149515 (S.D.N.Y. 2023) …………………….…..…14

*CAT3, LLC v. Black Lineage, Inc.,* 164 F.Supp.3d 488 (S.D.N.Y. 2016) ……………......17,18

*Doubleline Cap. LP v. Odebrecht Fin., Ltd.*, 2021 U.S. Dist. LEXIS 60959 (S.D.N.Y. 2021) .10

*EBIN NY, Inc. v. SIC Enter.,* 2022 U.S. Dist. LEXIS 172693 (E.D.N.Y. 2022) ………………13

*Health & Happiness (H&H) US LLC v. Nutramax Labs., Inc.,* 2026 U.S. Dist. LEXIS 64952 (S.D.N.Y. 2026) …………………………………..……………………………………………….*passim*

*Hoffer v. Tellone*, 128 F.4th 433 (2d Cir. 2025) ……………………………………………10,12,13

*Karsch v. Blink Health Ltd.,* 2019 U.S. Dist. Lexis 106971 (S.D.N.Y. 2019) …………….……..6

*Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.,* 880 F.3d 620 (2d Cir. 2018) …………………...10

*Lokai Holdings LLC v. Twin Tiger USA LLC*, 2018 U.S. Dist. LEXIS 46578( S.D.N.Y. 2018)…6

*Matthews v. Sweeney,* 2024 U.S. Dist. LEXIS 65150 (N.D.N.Y. 2024) ………………………..14

*Nurmagomedov v. Legionfarm, Inc.,* 2024 WL 4979235 (S.D.N.Y. 2024) ……………………..16

*Oakley v. MSG Networks, Inc.,* 792 F.Supp. 3d 377 (S.D.N.Y. 2025) ………………………….17

*Ottoson v. SMBC Leasing &Fin., Inc.,* 268 F. Supp. 3d 570 (S.D.N.Y. 2017) ……………...16,17

*PDV USA, Inc. v. Interamerican Consulting Inc.,* 2026 U.S. Dist. LEXIS 14721 (S.D.N.Y. 2026) …………………………………………………………………………………………*passim*

*Popat v. Levy,* 2022 U.S. Dist. LEXIS 177716 (W.D.N.Y. 2022) …………………………........9

*United States v. Prevezon Holdings, Ltd*, 305 F. Supp. 3d 468 (S.D.N.Y. Mar. 30, 2018)……..18

*Revson v. Cinque & Cinque*, 221 F.3d 71 (2d Cir. 2000) …………………………………….18

*Ronen v. RedRoute, Inc.,* 2025 WL 2790808 (E.D.N.Y. 2025) ………………………………16

*Sec. & Exch. Comm'n v. Shaohua Yin,* 2020 WL 6801915 (S.D.N.Y. 2020) ………………...16

*StoneX Group, Inc. v. Shipman*, 2024 WL 1509346 (S.D.N.Y. 2024) ……………………….14

*Taylor v. City of NY*, 293 F.R.D. 601 (S.D.N.Y. 2013) ………………………………………...9

*Ungar v. City of NY*, 329 FRD 8 (E.D.N.Y. 2018) ………………………………………….9

**Statutes, Rules, and Regulations**

Fed. R. Civ. P. 37(e) ……………………………………………………………...*passim*

ii

## I.    Introduction

Defendants seek Fed. R. Civ. P. 32(e)(2) sanctions consisting of an adverse inference instruction and attorneys' fees based on their premise that Plaintiff deliberately and permanently deleted job-search emails with the purpose of preventing Defendants from discovering her mitigation efforts. Specifically, Defendants claim that without the job-search emails, they are "unable to test Plaintiff's self-serving claims regarding her mitigation efforts and therefore seek an adverse inference instruction as the most appropriate remedy to redress the issue." Defs. Mem. at 1. The absurdity of Defendants' sanctions motion is tucked away in their own memorandum: "***Approximately two months after her termination from Paramount, Plaintiff obtained new employment*** with Endeavor Air as of January 27, 2025 . . .." Def's Mem. at 3 (emphasis added). To be clear: Defendants, who themselves acknowledge that Plaintiff found alternative employment just *two months* after they illegally fired her, who have deposed Plaintiff twice about her job search, and are now in possession of some 60 pages of job search records now scream "prejudice" because they supposedly cannot test whether Plaintiff exercised reasonable diligence in mitigating her damages. Additionally, Defendants have failed to present any evidence demonstrating that Plaintiff intentionally deprived them of her job search emails—evidence that Plaintiff would have no coherent reason to withhold or destroy because it only serves to strengthen her case. In short, Defendants' motion must be denied because they utterly fail to meet any part of their burden under Rule 32(e)(2).

## II.    Facts

Plaintiff began working for Defendants in July 2019 as an executive assistant for Defendant Douglas Johnson. (Seliger Decl. ¶ X (Compl. ¶ 6)). Defendant Johnson notified Plaintiff of her termination during her maternity leave on or about August 16, 2024. (Compl. ¶ 28). Plaintiff remained on Defendant Paramount's payroll through November 15, 2024. (Tr. 141:4-142:8). On

or about November 4, 2024, Plaintiff's attorney contacted Defendants regarding her claims. (Coyne Decl. ¶ 3). On January 30, 2025, Plaintiff filed this lawsuit alleging violations of the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), the Family Medical Leave Act ("FMLA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"). (Compl. ¶ 34-67).

In response to Defendants' first requests for production, on July 16, 2025, Plaintiff produced evidence that she had successfully attained a new job within less than two months of her last day on Defendants' payroll. (Seliger Decl. ¶ 3, Ex. 2, at P030). During Plaintiff's first deposition on December 17, 2025, Defendants questioned Plaintiff extensively concerning her mitigation efforts and whether and how she documented those efforts. (Tr. 143:5-181:20). During her first deposition, Plaintiff stated that she began her job search in or about December 2024. (Tr.149:4-14).[1] Plaintiff then testified about numerous job applications and other mitigation efforts she made between December 2024 and January 2025 when she found employment. (Tr. 143:5-181:20). Plaintiff testified that she may have additional evidence of her mitigation efforts prior to attaining her position at Endeavor Air. (Tr. 156:20-158:7). She also explained that she has two email accounts, one that she maintained for many years – MsLaguerre2010.vl@gmail.com (the "Old Email Account") – and one that she created upon being notified of her termination from Paramount – Vanessa.LaguerreMCK@gmail.com (the "New Email Account") to use for her anticipated job search. (Tr. 156:12-157:23). Plaintiff used her New Email Account for the vast majority of her job search communications, and only very occasionally used her Old Email Account to submit job applications. (Tr. 156:12-157:23; Laguerre Decl. ¶ 4). Plaintiff created the

---

[1] Plaintiff has since produced some documentation of job applications she sent as early as October 2024. (Seliger Decl. ¶ X).

New Email Account in or about August 2024 when Defendants notified her of her termination. (Laguerre Decl. ¶ 3).

Plaintiff produced additional documentation of her mitigation efforts on January 1 and January 6, 2026. (Seliger Decl. ¶ 4, Ex. 3 and ¶ 5, Ex. 4). Those productions evidenced at least five distinct applications or other efforts to mitigate. At Plaintiff's second deposition on January 7, 2026, Defendants again questioned her at length about her mitigation efforts and documentation of those efforts. (Tr. 324:2-335:19, 351:4-356:22). During this questioning, Plaintiff explained that she had "cleared out" her email by deleting "some messages" and, as a result, was not able to find all of her job search documentation. (Tr. 324:11-22). When asked if she had a practice as to how long she retained emails in her "personal email account," Plaintiff explained that Gmail was informing her that her account was "over full" and she needed to delete some emails. *Id.* at 324:23-325:5. Plaintiff testified that, as a result of this notification, she "delete[d] unuseful emails that's no longer useful for me to keep" to reduce "clutter." *Id.* at 325:5-13; *see also id.* at 326:2-9 (testifying that when she got the notification from Gmail, she would clear out "spam," "junk" and any other emails that she no longer needed). As Plaintiff testified, she "may delete emails just from a sort of space-saving function." *Id.* at 325:14-18.

At deposition, Defendants did not ask Plaintiff to specify which of her two email accounts was "over full" such that emails had to be deleted to save space. *See* Tr. at 324:2-335:19, 351:4-356:22. Plaintiff has since clarified that it was only her Old Email Account that was full and needed to be cleared out and that she did not conduct a mass deletion of emails from her New Email Account. Laguerre Decl. ¶¶ 5-9. While she did testify that she deleted emails from "both" accounts, Tr. at 387:16-388:7, these were spam and junk emails that were sent to her at both addresses, Laguerre Decl. ¶ 10. Although Plaintiff does not specifically recall deleting any job-search related

3

emails from her New Email Account, she cannot say with certainty that she never did so. *Id.* ¶ 11. To the extent that she deleted job search emails from her New Email Account, however, such deletions were not done for the purpose of depriving Defendants of such emails. *Id.*

Crucially, many of the specific job applications that Plaintiff was unable to locate have now been located and produced. Between her two depositions, Plaintiff testified that she applied for jobs with various airline companies, including Delta, American, United Airlines, Southwest, and Endeavor Air. (Tr. 145:4-7; 149:21-152:11; 165:11-18; 170:19-24; 351:2-10; 352:4-356:2). She also testified she applied for jobs with Wells Fargo and Target and participated in job seminars offered by the New York Department of Labor. (Tr. 353:16-24). Since her last deposition, Plaintiff's counsel obtained Plaintiff's email login credentials and personally conducted a thorough search of both of Plaintiff's email accounts. (Seliger Decl. ¶ 7). That search revealed approximately 14 additional documents evidencing Plaintiff's mitigation efforts. (Seliger Decl. ¶ 6, Ex. 5) Thirteen of the newly found documents were in the New Email Account. (Seliger Decl. ¶ 6, Ex. 5 and ¶ 8). The United Airlines job search information – thought to be lost in Plaintiff's mass deletion of emails – was located in the Old Email Account. (Seliger Decl. ¶ 6, Ex. 5 at P520-P532). Plaintiff's counsel immediately produced those documents to Defendants on March 27, 2026 as part of Plaintiff's ongoing obligation to supplement discovery. (Seliger Decl. ¶ 6, Ex. 5 at P491-P534).

In sum, Plaintiff has now produced documentation of her job applications to the following companies: Endeavor Air, American Airlines, Delta Airlines, Warner Brothers/CNN Worldwide, United Airlines, Atrium, Citibank, Four Seasons, Marriot International, JPMorgan, and Shef.[2] (Seliger Decl. ¶ 3, Ex. 2; ¶ 5, Ex. 4; ¶ 6, Ex. 5) Plaintiff has also produced documentation that she

---

[2] The documents indicate that Plaintiff sometimes applied to two different jobs at the same company.

signed up for job alerts from Indeed, drafted a resume, and attended job search workshops. (Seliger Decl. ¶ 3, Ex. 2; ¶ 5, Ex. 4; ¶ 6, Ex. 5). Most importantly, Plaintiff has produced evidence that this job search resulted in her securing a position at Endeavor Air in January 2025 – just two months after her termination from Paramount. (Seliger Decl. ¶ 3, Ex. 2).

III.    Defendants are not Entitled to Sanctions Under Rule 37(e)

a.    Rule 37(e) Legal Standard

Rule 37(e) governs sanctions for the loss of electronically stored information (ESI). *Health & Happiness (H&H) US LLC v. Nutramax Labs., Inc.* ("*Health & Happiness*"), 2026 U.S. Dist. LEXIS 64952, at *17-18 (S.D.N.Y. 2026). Rule 37(e) states that "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> (A) presume that the lost information was unfavorable to the party;
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Rule 37(e) requires a three-part analysis when determining whether to impose sanctions for loss of ESI. First, the statute requires a finding that the nonmoving party failed to take reasonable steps to preserve electronically stored information. *Health & Happiness*, 2026 U.S. Dist. LEXIS 64952, at *17-18. Second, only upon a finding of prejudice to the moving party may the Court authorize sanctions no greater than necessary to cure that prejudice. Fed. R. Civ. P. 37(e)(1). Finally, Rule 37(e) authorizes severe measures (including the adverse inference

instructions requested by Defendants in this motion) only upon a finding that the nonmoving party acted with the requisite "intent to deprive" the moving party of the missing information's use in litigation. Fed. R. Civ. P. 37(e)(1); *Nutramax Labs., Inc.*, 2026 U.S. Dist. LEXIS 64952, at *18 (*citing Karsch v. Blink Health Ltd.,* 2019 U.S. Dist. Lexis 106971 (S.D.N.Y. 2019)).

Even where "intent to deprive" is found, "[t]he sanctions permitted under Rule 37(e)(2) . . . are particularly harsh, and [c]ourts should exercise caution in using them." *Health & Happiness*, 2026 U.S. Dist. LEXIS 64952 at *19 (quoting *Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15 Civ. 9363, 2018 U.S. Dist. LEXIS 46578, at *26 (S.D.N.Y. Mar. 12, 2018)); *accord* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment ("Courts should exercise caution . . . in using the measures specified in (e)(2). Finding an intent to deprive does not require a court to adopt any of the measures listed in subdivision (e)(2)" and these "severe measures . . . should not be used when the information lost was relatively unimportant"). "An instruction to the jury that it should presume lost evidence to be unfavorable to the party that destroyed the evidence has long been considered an extreme sanction that should not be given lightly." *Health & Happiness*, 2026 U.S. Dist. LEXIS 64952 at *20 (quotation marks omitted).

Here, Defendant's motion should be denied because: (1) Plaintiff took reasonable steps to preserve her job search data by creating a separate email account to hold that data; (2) Defendants cannot show any prejudice flowing to them from Plaintiff's possible deletion of some job search emails where (a) Plaintiff has produced some 60 pages of job search records documenting her applications to at least 13 jobs, (b) through these efforts, Plaintiff secured a new job within two months of her termination, and (c) the production of additional emails would only serve to strengthen *her* mitigation arguments; and (3) Defendants cannot establish by a preponderance of the evidence that Plaintiff destroyed her job search records with the specific intent of depriving

6

Defendants of this information. Moreover, even if Defendants could establish any of these requirements, there is absolutely no basis for imposing the "severe" sanction of an adverse inference instruction.

### b. **Plaintiff took reasonable steps to preserve her job search data**

Defendants' argument that Plaintiff did not act reasonably in preserving her job search records is based on their assumption that Plaintiff conducted a "systematic purge" of *both* of her email accounts. *See* Defs' Mem. at 10 ("Beginning in December 2024 . . . Plaintiff undertook an admitted and systematic purge of her email accounts."); *see also id.* (deriding Plaintiff's "absurd explanation that she had to delete emails related to 20-50 job applications for space reasons in her newly established Gmail inbox"). While Plaintiff's deposition testimony is not a model of clarity on this point, she has since made clear that it was only her Old Email Account that required mass deletion of emails to save space. (Laguerre Decl. ¶ 6, 9). This makes sense—as she testified, she had held the Old Email Account since she was 18 and it was full of "junk" and "random" emails. (Tr. at 156:12-157:3.) Indeed, the very reason she created the New Email Account in August 2024 was to prevent her job search emails from getting "lost" in the Old Email Account. (*Id.* at 156:12-19). The vast majority of the job search records produced have been from that New Email Account, which Plaintiff repeatedly testified was the account she primarily used when sending job applications. (Tr. 156:12-157:8).

The fact of the matter is that while Plaintiff, like any other person with an email account, did occasionally delete emails from her New Email Account, she did not conduct a "systematic purge" of that account. Since Plaintiff's deposition, moreover, Plaintiff's counsel personally conducted a search of that account as well as the Old Email Account, found numerous additional emails Plaintiff thought were lost, and immediately produced them to Defendants. (Seliger Decl.

7

¶¶ 7-9). Thus, while Plaintiff may have deleted some job search emails from her Old Email Account when it became full and she had to clear space, the reasonableness of her preservation efforts is demonstrated by her creation of an entirely separate account and her production of numerous job search emails from that account.

### c.  Defendants have not been Prejudiced

Defendants next argue that Plaintiff's inadvertent deletion of some job-search-related emails has prejudiced their ability to "examine and challenge the adequacy of Plaintiff's efforts to find comparable employment." (Defs. Mem. at 11). This is facially absurd given their own acknowledgement that Plaintiff found a job two months after her final termination date and has produced job search records indicating that she applied for at least 13 jobs in the time between when Defendants informed her of her termination and when she started her new job. (Seliger Decl. (Seliger Decl. ¶ 3, Ex. 2; ¶ 5, Ex. 4; ¶ 6, Ex. 5). Defendants have now: (1) received over 60 pages of mitigation documentation; (2) questioned Plaintiff for hours over the course of two separate depositions regarding all aspects of her mitigation efforts; and (3) have evidence that Plaintiff attained new employment within just two months of her termination. To the extent Defendants still believe there is some incongruity between Plaintiff's deposition testimony and the job records she has produced, they will have the inevitable opportunity to cross examine Plaintiff at trial with respect to her mitigation efforts. To be sure, Rule 37(e) aims to cure prejudice from lost information, not to guarantee an opponent perfect documentary corroboration of every aspect of an adversary's testimony. *See Health & Happiness*, 2026 U.S. Dist. LEXIS 64952, at *35-36 (where moving party can fully litigate their claims and defenses with other data on the record, and where moving party cannot show why proof of each incremental item would materially change strength of their claims and defenses, court found no prejudice).

Moreover, because Plaintiff's counsel was able to locate and produce evidence of at least 14 additional job applications in March 2026, the so-called "gap between Plaintiff's testimony and her production" no longer exists and is certainly not prejudicial. In cases where supposed lost ESI has been recovered, courts have found a lack of prejudice. *Popat v. Levy,* 2022 U.S. Dist. LEXIS 177716, at *21 (W.D.N.Y. 2022) (citing cases and explaining that "absence of prejudice can be established by subsequent recovery" of supposedly missing ESI).

Next, Defendants bear the burden of showing that spoliated evidence is not just relevant to the case but would have been favorable to their claims or defenses. *See Taylor v. City of NY*, 293 F.R.D. 601, 613 (S.D.N.Y. 2013) (moving party must demonstrate not only that spoliator destroyed relevant evidence, but also that the evidence would have been of "assistive relevance" and favorable to moving party's claims or defenses) (internal citations omitted). Here, Defendants utterly fail to articulate how their being in possession of *even more* evidence of Plaintiff's mitigation efforts could possibly benefit them. Clearly, the existence of additional documentary proof of additional efforts by Plaintiff to find new employment would only strengthen *Plaintiff's* mitigation arguments, not Defendants'. Where the available evidence does not plausibly suggest that the lost ESI would have supported the moving party's case, sanctions are not appropriate. *Ungar v. City of NY*, 329 F.R.D. 8, 16 (E.D.N.Y. 2018) (where no circumstantial evidence indicates that the missing ESI would support moving party's claims or defenses, no prejudice can be found).

Tellingly, Defendants do not cite a single case with similar facts to support their prejudice argument. While Defendants cite authority indicating that they bear the burden of showing that Plaintiff did not make reasonable efforts to obtain comparable employment, Defs. Mem. at 10, they utterly fail to explain how their being in possession of even more evidence of Plaintiff's mitigation efforts could possibly help them meet that burden, *see id.* at 10-11. And Defendants'

9

contention that they have been deprived of the ability "verify whether Plaintiff actually submitted" the number of applications she estimated at deposition or "independently verify any aspect of Plaintiff's claimed job search" borders on the absurd given (a) they have documentary and testimonial evidence that Plaintiff engaged in an extensive job search and (b) that search indisputably resulted in her securing new employment a mere two months after her final termination date.

In sum, given Plaintiff's documented job search efforts, sworn testimony about her mitigation, and reemployment within just two months of termination, Defendants have not and cannot show that they have been prejudiced as to Plaintiff's mitigation efforts because they may not be in possession of every single job search email she sent. Courts under similar circumstances have reject such arguments of prejudice. *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.,* 880 F.3d 620 (2018) (testimony provided by nonmoving party supported conclusion that destruction of data was unlikely to impact the case, thus court found no prejudice to justify sanctions).

### d. Defendants Fail to Establish that Plaintiff had any Intent to Deprive them of her Job Search Records

Even if Defendants could establish prejudice (they cannot), they fall far short of meeting their burden of establishing that Plaintiff acted with the specific intent to deprive them of the job search records. To be awarded sanctions under to Rule 37(e)(2), Defendants must establish by a preponderance of the evidence that Plaintiff acted with an "intent to deprive" them of the use of the lost information in litigation. *Hoffer v. Tellone*, 128 F.4th 433, 438 (2d Cir. 2025). "A party's acting negligently or knowingly will not suffice to justify the sanctions enumerated in Rule 37(e)(2)." *Hoffer*, 128 F.4th at 438. Moreover, in this analysis, "'[i]t is the movant's burden to demonstrate that the spoliating party acted with the intent to *deprive*, not merely the intent to destroy.'" *Health & Happiness*, 2026 U.S. Dist. LEXIS 64952, at *19 (quoting *Doubleline Cap.*

10

*LP v Odebrecht Fin., Ltd.*, No. 17-cv-4576, 2021 U.S. Dist. LEXIS 60959, at *24 (S.D.N.Y. Mar. 30, 2021)). When determining whether a party acted with the requisite intent to deprive, courts consider the following factors:

> (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

*Health & Happiness*, 2026 U.S. Dist. LEXIS 64952, at *38-39.

Here, Defendants cannot show either that: (1) any job search emails Plaintiff may have deleted were "material" to their mitigation defense or (2) that Plaintiff's explanation for her lost emails cannot be credibly explained as not involving bad faith. As to the first factor, Defendants do not even bother to explain *how* the lost job search emails, which would only show Plaintiff's additional efforts to secure employment, could possibly be "material" to their mitigation defense. *See* Defs' Mem. at 13. This is especially so when Plaintiff indisputably secured a new job so quickly after her termination. Specifically, Defendants advance no argument they could have made had more job search emails been produced that they are now prevented from making. Nor have they attempted to explain how more job search emails would undercut Plaintiff's or call into question Plaintiff's mitigation efforts. Defendants' failure to even bother to explain how this materiality factor has been met dooms their motion on its own.

Next, Defendants' arguments about Plaintiff's supposed bad faith intent to deprive them of her job search records again rests mainly on their incorrect assumption that Plaintiff mass deleted emails from *both* of her accounts. *See* Defs' Mem. at 14. Specifically, Defendants spend much time arguing that deletions from the New Email Account were unnecessary because that account could not have become full by December 2024 when it was likely created in or around August

11

2024. Def's Mem. at 14. They are correct. That New Email Account was not full, and, as discussed above, Plaintiff did not conduct any such mass deletion from her New Email Account. And to the extent Plaintiff deleted job search emails from her Old Email Account, she clearly testified that her only motive in deleting any emails from that account was not to deprive Defendants of any information but rather to save storage space. *See* Tr. at 323:14-18 ("Q: So if I understand you correction, you may delete emails just from a sort of space-saving function. Is that fair? A: Yes."). There is nothing implausible about Plaintiff's account of having received a warning from Gmail that her Old Email Account was at capacity and then conducting a mass deletion of emails in response. The deletion of any job search emails in this process was clearly inadvertent, or at most negligent, which is insufficient to demonstrate the required intent to deprive. *Hoffer*, 128 F.4th at 438.

Defendants' assertion that they may rely on circumstantial evidence to support a finding of "intent to deprive" is correct but simply falls flat. All the circumstantial evidence in this case weighs heavily in Plaintiff's favor. First, Defendants have advanced no logical reason *why* Plaintiff would intentionally delete her job search emails to deprive Defendants from obtaining them. This is because there simply is no logical reason for her to withhold beneficial job search evidence that would only corroborate her mitigation efforts. This is not a case where Plaintiff was out of work for a substantial period of time and thus had an incentive to cover up her lack of job search efforts. Rather, she obtained new employment within roughly two months of her official termination date. More documentary evidence about her job search in this short period simply would not tend to call into question the extent of her mitigation efforts; it would instead do the opposite by showing additional efforts on her part.

Second, Plaintiff maintained the dedicated New Email Account to better preserve mitigation data and has continually produced and then supplemented her production of mitigation evidence throughout this litigation. Where a party has made some effort to preserve ESI, even if those efforts are not fully successful, those efforts weigh against a finding of intent to deprive required for a sanctions order. *EBIN NY, Inc. v. SIC Enter.,* 2022 U.S. Dist. LEXIS 172693, at *34 (E.D.N.Y. 2022) (ESI was lost despite nonmoving party making many efforts to preserve it, but nonmoving party made many efforts to produce all relevant information in its possession and thus lacked intent to deprive required for sanctions).

Third, to the extent Defendants' motion is built around the assumption that because Plaintiff intentionally deleted emails, she must have also intended to deprive Defendants of the use in of those emails in litigation, Rule 37(e)(2) does not permit that leap. Instead, Defendants must show that Plaintiff not only intended to delete the ESI, but in doing so she also intended to prevent Defendants from using the ESI in litigation. *Hoffer*, 128 F.4th at 434. Again, Defendants have offered no explanation as to why Plaintiff would intentionally destroy job search evidence that would only serve to corroborate her mitigation efforts.

Defendants do not cite any case in which unintentional or even negligent deletion of ESI justified Rule 37(e)(2) sanctions. Rather, Defendants cite *PDV USA, Inc. v. Interamerican Consulting Inc.,* 2026 U.S. Dist. LEXIS 14721 at *60 (S.D.N.Y. 2026). In that case, the nonmoving party selectively deleted evidence it knew was helpful to the moving party, changed their explanations for the missing ESI, provided several unsupported and outlandish explanations for the loss of the ESI, and engaged in ongoing obfuscation and obstruction throughout discovery. *Id.*

at 51-60.[3] Here, by contrast, Plaintiff took steps to preserve relevant evidence in a separate account and had no reason to delete evidence that could only bolster her case. And rather than try to deprive Defendants of mitigation evidence, Plaintiff supplemented her production several times and even turned over her email login credentials to her counsel to guarantee that she did not miss anything that should be produced.

Defendants also cite *StoneX Group, Inc. v. Shipman*, 2024 WL 1509346, at *11 (S.D.N.Y. 2024), where the nonmoving party used sophisticated data wiping software to delete inconvenient information, lied under oath, and could not proffer a credible explanation for the lost information. By contrast, Plaintiff turned over her email login credentials to counsel to be absolutely sure that she had produced all ESI in her possession, provided a reasonable explanation for why she may not have documentation of every job application she sent, and was consistent and forthright about her mitigation during her depositions. Under similar circumstances, courts find a lack of intent to deprive and reject motions for sanctions. *Health & Happiness*, 2026 U.S. Dist. LEXIS 64952, at *45-46; *Matthews v. Sweeney,* 2024 U.S. Dist. LEXIS 65150 (2024) (where nonmoving party supplemented production when new data was discovered and provided reasonable explanations for the loss of certain ESI, Court found no intent to deprive); *Castro v. Smith,* 2023 U.S. Dist. LEXIS 149515 (2023) (the intent standard requires more than merely performing an act that results in destruction of ESI; it requires deliberate intent to deprive another party of the evidence, thus court denied imposition of severe sanctions, such as adverse inferences or dismissal, under Rule 37(e)(2)); *A.W.S. v. Southampton Union Free Sch. Dist.,* 2022 U.S. Dist. LEXIS 72546 (2022).

---

[3] In *PDV USA*, the court awarded sanctions under Rule 37(e)(2) in the form of jury instructions that acknowledged the nonmoving party's deletion of ESI helpful to the moving party but also included the fact that the nonmoving party was able to recover some of the lost ESI. *Id.* at 66.

14

In sum, because Defendants cannot show either that some lost job search emails are "material" to one of their claims or defenses or that Plaintiff does not have a good faith explanation for the lost emails, they cannot meet their burden of showing that she acted with the specific intent to deprive them of such emails. As a result, their motion should be denied.

### e.  Adverse Inference Sanctions are Not Warranted

Finally, even if Defendants could meet their burden under Rule 37(e)(2), an adverse inference sanction would not be warranted for two reasons. First, as discussed above, "[a]n instruction to the jury that it should presume lost evidence to be unfavorable to the party that destroyed the evidence has long been considered an extreme sanction that should not be given lightly." *Health & Happiness*, 2026 U.S. Dist. LEXIS 64952 at *20 (quotation marks omitted). Indeed, the advisory committee notes to Rule 37(e) specifically warn that such "severe measures . . . should not be used when the information lost was relatively unimportant." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. That is precisely the case here—when considered in connection with the fact that Plaintiff has already secured employment and did so within a brief time period, additional evidence of her additional job search efforts is unimportant.

Second, Defendants' argue that an adverse inference "is necessary because the deleted emails constituted the only contemporaneous documentary evidence of Plaintiff's mitigation efforts, and without it, Defendants are left to challenge Plaintiff self-serving testimony with no documentary record whatsoever," is simply incorrect. Defs. Mem. at 16. Plaintiff has provided numerous documents supporting her job search efforts. Even more important, she has attained a new job and provided documentary evidence of her compensation in that new position. Plaintiff's so-called "self-serving testimony" is sworn deposition testimony, much of which is supported by

the documents produced. Any "evidentiary gap" perceived by Defendants can be fully explored in cross examination and impeachment at trial.

Finally, as recognized in *Arrigo v. Link Stop, Inc*, 2014 U.S. Dist. LEXIS 55495 (W.D. Wisc. Apr. 21, 2014), an adverse instruction that asks the jury "to infer that Plaintiff's permanently deleted job search emails would have been unfavorable to Plaintiff's claims regarding her mitigation of damages," Defs' Mem. at 20, simply makes no sense in this context. In that case, like here, the defendants argued that a plaintiff's supposedly lost job search records warranted the same adverse inference Defendants seek here. *Arrigo*, 2014 U.S. Dist. LEXIS 55495, at *25.   The *Arriago* court denied that request, explaining that "such an instruction would make no sense . . . because the missing documents allegedly are evidence of plaintiff's job search efforts, so it is difficult to see how those documents could have supported defendants' position." *Id.* at *25-26. As in *Arrigo*, the inference Defendants ultimately "want the jury to draw is that the absence of documents shows that plaintiff is lying about her job search efforts" but they have not explained how such an inference is remotely permissible, especially given the evidence *that Plaintiff has a new job* and therefore must have been successful in her job search.

Finally, the cases Defendants cite where courts did grant adverse inference sanctions are wholly inapplicable here. In those cases, the nonmoving parties intentionally selected ESI and deleted it after receiving notice to preserve it,[4] deleted tens of thousands of relevant documents,[5] disposed of devices to hide ESI,[6] purposely withheld emails,[7] failed to provide believable reasons

---

[4] *Nurmagomedov v. Legionfarm, Inc.,* 2024 WL 4979235, at *6 (S.D.N.Y. 2024); *PDV USA, Inc. v. Interamerican Consulting Inc.*, 2026 WL 203036, at *9 (S.D.N.Y. 2026).
[5] *Sec. & Exch. Comm'n v. Shaohua Yin,* 2020 WL 6801915, at *5 (S.D.N.Y. 2020).
[6] *Sec. & Exch. Comm'n v. Shaohua Yin,* 2020 WL 6801915, at *5 (S.D.N.Y. 2020); *PDV USA, Inc. v. Interamerican Consulting Inc.*, 2026 WL 203036, at *9 (S.D.N.Y. 2026); *Ronen v. RedRoute, Inc.,* 2025 WL 2790808, at *7 (E.D.N.Y. 2025).
[7] *Ottoson v. SMBC Leasing &Fin., Inc.,* 268 F. Supp. 3d 570, 584 (S.D.N.Y. 2017).

for the missing ESI,[8] and lied under oath.[9] No parallels can be drawn between those extreme circumstances and this case.

For all of these reasons, Defendants' request for an adverse inference under Rule 37(e)(2) must be denied. .

## IV.     Defendants are not Entitled to Sanctions Under the Court's Inherent Authority

Defendants alternatively invoke the Court's inherent authority to impose sanctions. A district court has the inherent authority to impose sanctions on a party for spoliation, but when the lost evidence consists of electronically stored information, the sanctions analysis is governed by Rule 37(e). *Health & Happiness (H&H) US LLC v. Nutramax Labs., Inc.*, 2026 U.S. Dist. LEXIS 64952, at *17 (S.D.N.Y. 2026); *Barbera v. Grailed, LLC,* 2025 U.S. Dist. LEXIS 142885, at *10 (S.D.N.Y. 2025) ("Rule 37(e) 'forecloses reliance on inherent authority or state law to determine when certain measures should be used' in ESI spoliation cases." (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment)).

Defendants cite to *PDV USA, Inc. v. Interamerican Consulting Inc.,* 2026 WL 203036, at *9 (S.D.N.Y. 2026) to assert that the Court may rely on its inherent power to control litigation to impose sanctions here. However, Defendants reliance on that case is improper. The Court in *PDV USA* stated that had Rule 37(e) *not been applicable* to the circumstances at issue, it would have found sanctions appropriate under its inherent power. *Id.* The *PDV USA* court does not state that it can bypass the requirements laid out in Rule 37(e) when applicable by calling on the court's inherent authority. *PDV USA, Inc. v. Interamerican Consulting Inc.,* 2026 WL 203036.

Defendants also rely upon *CAT3, LLC v. Black Lineage, Inc.,* 164 F.Supp.3d 488, 498 (S.D.N.Y 2016). Defendants are mistaken in relying on *CAT3*, as it involved a unique situation

---

[8] *Ottoson v. SMBC Leasing &Fin., Inc.,* 268 F. Supp. 3d 570, 584 (S.D.N.Y. 2017).
[9] *Oakley v. MSG Networks, Inc.,* 792 F.Supp. 3d 377, 393 (S.D.N.Y. 2025).

17

where, after the defendants moved for sanctions, Rule 37(e) went into effect and overhauled the applicable standard for spoliation of electronically stored information. *CAT3, LLC*, 164 F. Supp. 3d at 495-96. Given the circumstances there, the court had to determine whether application of the new Rule 37(e) "would not be feasible or would work injustice." *Id.* The *CAT3* court's imposition of sanctions pursuant to *both* Rule 37(e) and its inherent authority reflects a decision to analyze the sanctions motion regardless of the propriety of applying Rule 37(e). *A.W.S. v. Southampton Union Free Sch. Dist.,* 2022 U.S. Dist. LEXIS 72546, at *10 (E.D.N.Y. 2022). The *CAT3* court held the plaintiff's actions warranted sanctions under Rule 37(e) and inherent authority standards. 164 F. Supp. 3d at 498, 501. Defendants' motion here does not arise in an analogously unique situation.

Nevertheless, *CAT3* also specifies that in the rare case that a court does resort to its inherent power to invoke sanctions, it is only in the case of "bad faith spoliation" and "abuse of the judicial process." *Cat3, LLC,* 164 F. Supp. 3d 488, 497 (S.D.N.Y. 2016). This bad faith requirement is a "high bar to satisfy," and, for all the reasons discussed above, Defendants cannot do that here. *Prevezon*, 305 F. Supp. 3d at 483. (citing *Revson*, 221 F.3d at 77-78).

### V.      Attorneys Fees are Not Warranted

Finally, Defendants' request for attorneys' fees under Rule 37(e) is completely unavailing. *See* Defs' Mem. at 19-20. An award of attorneys' fees and costs is available under Rule 37(e) only "to the extent reasonable to address any prejudice caused by the spoliation." *Health & Happiness*, 2026 U.S. Dist. LEXIS 64952, at *46-47. It follows that where, as here, there has been no prejudice caused by the hypothetical spoliation of a handful of job search emails, an award of attorneys' fees is improper.

18

Defendants cannot satisfy Rule 37(e)(1)'s showing of prejudice requirement, Rule 37(e)(2)'s intent to deprive requirement, or invoke the Court's inherent authority to impose sanctions. Thus, there is no basis for shifting fees. Rule 37(e)(1) does not authorize the imposition of sanctions for litigating "discovery abuses," which is essentially what Defendants here request. *Health & Happiness*, 2026 U.S. Dist. LEXIS 64952, at *46-47.

## VI.    Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion for Sanctions in its entirety.

Dated: New York, New York
        April 23, 2026

By:    __/s/Leah Seliger_____
       D. Maimon Kirschenbaum
       Leah Seliger
       Lucas C. Buzzard
       JOSEPH & KIRSCHENBAUM LLP
       45 Broadway, Suite 302
       New York, NY 10006
       212-688-5640
       *Attorneys for Plaintiff*

19

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing opposition complies with the word-count limitation stated in SDNY Local Rule 7.1(c). Excluding the case caption, tables, this certification, and counsel's signature block, but including all footnotes, this brief contains 5,980 words. I make this certification using the word count feature of Microsoft Word.

/s/Leah Seliger